Docket No. 102428.

IN THE
SUPREME COURT
OF THE
STATE OF ILLINOIS

_____

ALMON B. HEASTIE, Appellee, v. DANIELA ROBERTS *et al.*,
Appellants.

*Opinion filed November 1, 2007.*


JUSTICE KARMEIER delivered the judgment of the court, with
opinion.
Chief Justice Thomas and Justices Freeman, Fitzgerald, Kilbride,
Garman, and Burke concurred in the judgment and opinion.


**OPINION**

Plaintiff, Almon B. Heastie, brought an action in the circuit court
of Cook County to recover damages for personal injuries he sustained
in a fire which took place while he was involuntarily restrained on a
cart while awaiting treatment in the emergency room of the Columbia
Olympia Fields Osteopathic Hospital and Medical Center (the
Hospital). Named as defendants were the Hospital; Jason Humphrey,
one of the Hospital's security guards; an emergency room technician
named Dawn Epley; and two registered nurses who were involved in
plaintiff's care, Daniela Roberts and Josephine Onyema. Following a
jury trial, a verdict was returned in favor of all defendants and against

plaintiff. The appellate court reversed and remanded for a new trial on the grounds that the circuit court had erred in dismissing, on the pleadings, a negligence count asserted by plaintiff based on the doctrine of *res ipsa loquitur*. No. 1–03–3463 (unpublished order under Supreme Court Rule 23). We granted defendants' petition for leave to appeal. 210 Ill. 2d R. 315. For the reasons that follow, the judgment of the appellate court is affirmed in part and reversed in part, and the cause is remanded to the circuit court for further proceedings.

## BACKGROUND

The litigation which gave rise to this appeal commenced in the fall of 1998, approximately nine years ago. The trial court proceedings lasted more than half a decade, culminating in a month-long jury trial during the summer of 2003 involving the testimony of approximately two dozen witnesses. The resulting record is voluminous. For now, we need only summarize the basic facts of the case. Additional details will be supplied as necessary during the course of our analysis.

Plaintiff is a 50-year-old male whose intelligence is in the extremely low to borderline deficient range. On the evening of October 3, 1998, paramedics responded to a call that he was in need of medical attention. When they arrived on the scene, they found him lying intoxicated in a residential driveway and transported him to the emergency room of the Hospital, a Level 1 trauma center. Plaintiff had a history of alcohol abuse and had been taken to the same emergency room in an intoxicated condition before.

When plaintiff arrived at the Hospital, medical personnel assessed his condition. They determined that he was not suffering from anything requiring immediate medical intervention. He was, however, extremely drunk, unable to stand, uncooperative, disoriented, and

incapable of making rational decisions for himself.[1] He was also yelling and combative.

Daniela Roberts, who was serving as the Hospital's emergency room's charge nurse, believed that plaintiff was in immediate danger of harming himself or others. In accordance with the Hospital's restraint and seclusion policy, nurse Roberts therefore decided that he should be restrained on a cart and moved to an area away from other patients. To accomplish this, nurse Roberts required the assistance of three other persons: defendants Onyema, who was also a nurse; Dawn Epley, the emergency room technician; and Jason Humphrey, the hospital security guard.

Roberts, Onyema and the others succeeded in placing plaintiff on the cart and securing him there using four-point "hard" (*i.e.*, rigid) restraints, which were locked over plaintiff's wrists and ankles, then attached to the cart with straps and buckles. Once plaintiff was thus restrained, he was wheeled into a separate section of the emergency room area known as the cast room, so called because it was where casts were applied to the limbs of injured patients.

The cast room was partitioned off from the other parts of the emergency room by windowless walls and a door. The room contained a sink, electrical outlets, lights and equipment, and a variety of supplies used in applying casts. Because of the danger of fire in such an environment, the room was equipped with a heat detector. It did not, however, have a smoke detector.

The Hospital had a different room it normally used to sequester patients. The cast room was used for plaintiff instead because the regular seclusion room was in use and the cast room was available. In accordance with the Hospital's policy, Hospital staff were required to search plaintiff for contraband when he was restrained and sequestered. That was not done. Pursuant to Hospital policy, a physician was supposed to review the need to restrain him within an

---

[1] When plaintiff's blood-alcohol concentration was finally checked, it was determined to be 0.384. That level was nearly five times the legal limit of 0.08 currently provided by the Illinois Vehicle Code (see 625 ILCS 5/11–501 (West 2006)), and approached concentrations regarded as lethal (see *People v. Taylor*, 212 Ill. App. 3d 351, 355 (1991)).

hour. That was not done. Hospital policy also required that staff check on plaintiff's behavior and degree of control at 15-minute intervals. While nurse Roberts did look in on plaintiff according to that schedule for the first hour, she became occupied with another emergency room patient and did not check on plaintiff after 9 p.m.

Sometime after 9 p.m., an intern working in the emergency room heard plaintiff yelling and went into the cast room to see what he wanted. The intern ascertained that plaintiff required a urinal, then left, advising a nurse of what was going on. Epley, the emergency room technician, subsequently closed the door to the cast room so that other emergency room patients would not have to listen to the noise plaintiff was making.

At approximately 9:30 p.m., the heat alarm in the cast room activated the emergency room's fire alarm bells. A psychotherapist named Tim Jenkins, who had been standing nearby, was the first to respond. He opened the door and saw smoke and fire. Plaintiff was still secured to the cart by the rigid restraints. He was on fire, as was the wall behind him. Flames from the fire were so high they reached the ceiling.

Jenkins attempted to extinguish the flames on plaintiff's body using a curtain that divided treatment bays in the cast room, but the smoke and flames drove him from the room before he could put the fire out. An intern named Dr. David Gilchrist then located a fire extinguisher and was able to use it to stop the fire.

According to Epley, there was also fire on the floor of the room. Epley got down on her hands and knees and put it out using a sheet she had carried with her into the room. She then released the brakes on the cart to which plaintiff was restrained and wheeled him into a trauma room. Once plaintiff was in the trauma room, Epley cut the restraints from his wrists and ankles. A physician named Simeakis realized that plaintiff needed to be resuscitated and intubated him to enable him to breathe. By this time a trauma team was on the scene and plaintiff, who was badly burned, was transported by helicopter to Loyola University Medical Center (Loyola).

When examined by doctors at Loyola, plaintiff was found to be suffering from third degree burns to both upper extremities, inhalation injury, and full thickness burns to the anterior torso, bilateral groins,

genitalia, and bilateral lower extremities. Extensive debridement and grafting was required. His right thumb and some of his fingertips had to be amputated. Multiple surgeries were ultimately required, including surgery on his penis and surgery to repair and reconstruct his hands. Plaintiff remained on a respirator and unconscious for weeks after the accident. As a result of his injuries he is unable to live independently and will require the assistance of a care giver for the remainder of his life.

An investigation of the fire was conducted by law enforcement authorities, led by a detective from the Olympia Fields police department. The detective was never able to reach an opinion as to how or by whom the fire was started. A lab report indicated the presence of an accelerent in plaintiff's pants, but where the accelerant came from was unknown. Although a State police officer reported to the Olympia Fields detective that he had found a disposable lighter on the floor of the cast room sometime after the fire had been extinguished, the significance of that discovery, if it had any, could never be ascertained by authorities. None of the witnesses who were involved in putting the fire out or who were in the cast room immediately before or after the blaze ever saw the lighter, the lighter exhibited no apparent signs of fire damage, it bore no fingerprints, and there was no evidence linking it to plaintiff. Plaintiff himself could not even recall being at the Hospital, much less how the fire started.

Four days after the fire, the Hospital, through one of its administrators, sent a letter to Daniela Roberts, the emergency room charge nurse on duty when the accident occurred. The letter advised nurse Roberts that her employment with the Hospital was being terminated because of the incident involving plaintiff. Termination was to take effect immediately based on an employee-behavior policy authorizing such termination in cases involving negligence or patient abuse or mistreatment.

Plaintiff ultimately brought a negligence action against defendants in the circuit court of Cook County to recover damages for the personal injuries he sustained as a result of the fire. As the case progressed, plaintiff amended his complaint multiple times. The fifth version, and the one at issue here, contained three counts. Count I alleged that defendants had been negligent for restraining him improperly, for failing to search him for contraband before restraining

him on the cart, for not adequately monitoring him, and for not providing timely notice to a physician that they had placed him in four-point restraints in the cast room. Count II, directed solely against the Hospital, averred that the institution was negligent for not installing a smoke detector in the cast room and for failing to provide adequate training to Hospital personnel regarding the proper use of fire extinguishers.

The focus of this appeal is the third count. That count, which named all defendants, asserted a claim for negligence based on the doctrine of *res ipsa loquitur.* It alleged that (1) "in the ordinary course of the operation of a hospital emergency room, fires do not start in the rooms of patients who, like Plaintiff, Almon Heastie, are put in restraints because they are at risk to harm themselves or who are not capable of protecting themselves from harm" unless the hospital or its personnel have been negligent, and (2) that "the cast room, the four-point restraints, the manner in which the restraints were applied, whether Plaintiff, Almon Heastie, was searched for items that could cause him injury, such as matches or a lighter, and all other aspects of the condition of Plaintiff" were under defendants' control.

Defendants challenged plaintiff's complaint in a combined motion to dismiss under sections 2–615 and 2–619 of the Code of Civil Procedure (735 ILCS 5/2–615, 2–619 (West 2004)).[2] The section 2–615 component of the motion took issue with how issues of duty had been pled in the complaint. The section 2–619 portion of the motion raised a statute of limitations issue. See 735 ILCS 5/2–619(a)(5) (West 2004). Defendants' motion also sought dismissal of plaintiff's *res ipsa loquitur* count, but did not specify the procedural predicate on which that request for relief was based.

Following a hearing, the circuit court dismissed the *res ipsa loquitur* count and reserved a ruling on the statute of limitations issue. While defendants never indicated the procedural basis for their attack on plaintiff's *res ipsa* count and invoked evidentiary issues as well as points of law and questions regarding the sufficiency of plaintiff's allegations, the circuit court treated this as a dismissal on the

---

[2]Such combined motions to dismiss are permitted under section 2–619.1 of the Code of Civil Procedure (735 ILCS 5/2–619.1 (West 2004)).

pleadings pursuant to section 2–615 of the Code of Civil Procedure (735 ILCS 5/2–615 (West 2004)). As the court observed, "what [it had] to decide at this moment is the complaint, not what the evidence is because the Court hasn't heard the evidence."

After the court dismissed the *res ipsa* count based on the complaint and the arguments of counsel, the cause proceeded to trial before a jury. At the outset of the trial, the circuit court denied a motion *in limine* filed by plaintiff seeking to bar defendants from arguing that plaintiff himself was negligent or that his negligence caused or contributed to his injuries. At the same time, the court also granted motions *in limine* filed by defendants to prevent plaintiff from presenting evidence that "something other than plaintiff" caused the fire and to preclude testimony from certain of plaintiff's experts or others that the failure to perform a contraband check was the proximate cause of plaintiff's injuries.

Plaintiff moved for reconsideration of the *in limine* rulings. When that request was denied, he filed a motion for a mistrial, arguing that the circuit court's rulings would preclude him from receiving a fair trial. The circuit court rejected plaintiff's argument and denied his motion for mistrial.[3]

In light of the circuit court's pretrial rulings, including dismissal of count III containing the *res ipsa* doctrine, plaintiff ultimately proceeded before the jury only on two of the negligence theories set forth in count I of his complaint, specifically, that defendants failed to restrain him properly and had not properly and adequately monitored him while he was in the restraints. Consistent with the circuit court's decision, the *res ipsa* doctrine was not argued to the jury. The claim asserted by plaintiff in count II was also not presented to the jury, and that count is not at issue on this appeal.

Defendants, for their part, urged the jury to reject plaintiff's claims on the grounds that plaintiff alone was responsible for the injuries he sustained. Defendants' theory was that because plaintiff was by himself in the cast room when the fire started and because a

_____

[3]This initial mistrial motion was filed on June 20, 2003. Plaintiff made a second motion for mistrial on July 11, 2003, at the conclusion of defendants' evidence. It was also denied.

lighter was subsequently found on the cast room floor, plaintiff must have used the lighter to ignite the blaze.

As noted earlier, investigators were unable to establish the actual cause of the fire. No one involved in the incident reported seeing the lighter, and there were no fingerprints or other evidentiary items connecting plaintiff to the lighter. Defendants, however, contended that their theory was supported by an occupational therapist who treated plaintiff after the accident. In particular, they cited an entry in the therapist's notes that "[p]er patient, did not mean to set self on fire."

The existence of the therapist's entry was not disputed. Its basis, however, was vigorously challenged. In the course of being questioned at trial, the therapist admitted that she could not recall what she had asked plaintiff to elicit this response or how exactly he had communicated it to her when he was still intubated and could not speak. In fact, she stated that she had no independent recollection that plaintiff had ever told her anything about the fire's origins.

The therapist surmised that her notation was based on the way plaintiff nodded his head in response to something she asked him. She admitted, however, that plaintiff was in pain and on intravenous pain medication during the interview; that she did not know how well oriented he really was; and that if plaintiff had nodded his head in response to her question, she could not be sure whether he actually meant "no, I didn't start the fire" instead of "no, I didn't mean to set myself on fire." In the end, she specifically conceded that she simply could not say whether the assumptions on which her notation was based were accurate or not.

Following the therapist's testimony, plaintiff's counsel sought leave to present rebuttal evidence. The purpose of that evidence was to refute defendants' contention that plaintiff was solely responsible for his own injuries by showing that if plaintiff did set himself on fire with a lighter, as defendants theorized, he was able to do so only because Hospital personnel had failed to search him for contraband, as Hospital policy required. The circuit court rejected that request on the grounds that the search was no longer an issue in the case.

At the conclusion of the trial, plaintiff tendered a set of proposed jury instructions including negligence instructions containing the *res*

*ipsa* doctrine. Plaintiff had prepared those instructions earlier to correspond with count III of his amended complaint. Notwithstanding the dismissal of count III, plaintiff argued in conference that the *res ipsa* doctrine should still apply. The instructions were refused.

The jury ultimately returned a verdict in favor of defendants and against plaintiff. Plaintiff filed a posttrial motion pursuant to section 2–1202 of the Code of Civil Procedure (735 ILCS 5/2–1202 (West 2004)), which was denied. Plaintiff then appealed to the appellate court, raising numerous contentions of error pertaining to the admissibility of evidence, the applicability of contributory negligence, and the circuit court's refusal to permit him to proceed on his *res ipsa loquitur* claim.

The appellate court reversed and remanded for a new trial in an unpublished order under Supreme Court Rule 23, with one justice dissenting. In ruling as it did, the appellate court first held that plaintiff had satisfied the elements of the *res ipsa loquitur* doctrine and that the *res ipsa* count should not have been stricken from his fifth amended complaint. The court further held that the circuit court erred in barring plaintiff from presenting evidence that defendants had deviated from the applicable standard of care by failing to search him for contraband before restraining him to a bed in the emergency room. In the appellate court's view, plaintiff should have been allowed to present that evidence to the jury along with defendants' evidence that plaintiff was responsible for his own injuries. Because the court concluded that the foregoing errors entitled plaintiff to a new trial, it did not reach the additional points of error plaintiff had raised. *Heastie v. Roberts*, No. 1–03–3463 (March 16, 2005) (unpublished order under Supreme Court Rule 23).

Defendants moved for rehearing. After the appellate court denied that motion, defendants petitioned our court for leave to appeal. 210 Ill. 2d R. 315. We denied that petition, but issued a supervisory order directing the appellate court to vacate its Rule 23 order and to reconsider the case in light of our opinion in *Sullivan v. Edward Hospital*, 209 Ill. 2d 100 (2004). *Heastie v. Roberts*, 216 Ill. 2d 685 (2005) (table).

On remand, the appellate court concluded that the testimony plaintiff sought to adduce regarding his claim that the defendant nurses had deviated from the applicable standard of care did not

comport with our holding in *Sullivan v. Edward Hospital* and that the circuit court had therefore not abused its discretion when it granted defendants' motion *in limine* to exclude that evidence. The court continued to hold, however, that the circuit court should not have granted defendants' motion to dismiss plaintiff's claim based on *res ipsa loquitur*. Applying the standards applicable to motions to dismiss under section 2–615 of the Code of Civil Procedure (735 ILCS 5/2–615 (West 2004)), the court held that count III of plaintiff's complaint sufficiently set forth the elements of the *res ipsa* doctrine and that the circuit court erred in striking the count from the complaint. The appellate court therefore once again reversed and remanded to the circuit court for a new trial. No. 1–03–3463 (unpublished order under Supreme Court Rule 23). As with the original disposition, one justice dissented.

Following the appellate court's second ruling, defendants filed a new petition for leave to appeal. 210 Ill. 2d R. 315. The basis for that petition was that the appellate court's interpretation and application of the *res ipsa loquitur* doctrine in this case was inconsistent with this court's decision in *Sullivan v. Edward Hospital*, 209 Ill. 2d 100 (2004), and represented an unwarranted expansion of the doctrine. Defendants also asserted that prohibiting use of the doctrine in this case was not reversible error because plaintiff failed to adduce evidence to establish the elements of the doctrine and did not meet his burden of proving proximate cause. Defendants' petition was allowed. 210 Ill. 2d R. 315.

ANALYSIS

We begin our review with the question of whether the appellate court erred in concluding that the circuit court should not have prevented plaintiff from proceeding under count III of his amended complaint, which relied on the doctrine of *res ipsa loquitur*. As indicated earlier in this opinion, plaintiff was barred from proceeding under that count before the trial commenced. The count was eliminated from the litigation when the circuit court granted

defendants' motion to dismiss under section 2–615 of the Code of Civil Procedure (735 ILCS 5/2–615 (West 2004)).[4]

Because an order granting a section 2–615 motion to dismiss presents a question of law, our review is *de novo*. See *Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2003). Whether the *res ipsa loquitur* doctrine should apply in a particular case also presents a question of law, so *de novo* review is appropriate for this reason as well. See *Gatlin v. Ruder*, 137 Ill. 2d 284, 294 (1990).

A section 2–615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face. In reviewing the sufficiency of a complaint, a court must accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. In addition, the allegations in the complaint must be construed in the light most favorable to the plaintiff. A cause of action should not be dismissed under section 2–615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006).

Count III of plaintiff's complaint asserts a common law action for negligence based on the doctrine of *res ipsa loquitur*. The nature and purpose of the *res ipsa* doctrine were aptly described by this court in *Metz v. Central Illinois Electric & Gas Co.*, 32 Ill. 2d 446, 448-49 (1965), where we wrote:

> "When a thing which caused the injury is shown to be under the control or management of the party charged with negligence and the occurrence is such as in the ordinary course of things would not have happened if the person so charged had used proper care, the accident itself affords reasonable evidence, in the absence of an explanation by the

---

[4]Because the negligence count based on *res ipsa* was dismissed prior to commencement of the trial, this case is distinguishable from decisions such as *Adams v. Family Planning Associates Medical Group, Inc.*, 315 Ill. App. 3d 533 (2000), where the claim based on *res ipsa* was not stricken until the jury-instruction conference following the presentation of the evidence.

party charged, that it arose from want of proper care. [Citations.] This in essence is the doctrine of *res ipsa loquitur*, and its purpose is to allow proof of negligence by circumstantial evidence when the direct evidence concerning cause of injury is primarily within the knowledge and control of the defendant."

Consistent with this view, we have held that a plaintiff seeking to rely on the *res ipsa* doctrine must plead and prove that he or she was injured (1) in an occurrence that ordinarily does not happen in the absence of negligence, (2) by an agency or instrumentality within the defendant's exclusive control. *Gatlin v. Ruder*, 137 Ill. 2d at 295. In setting forth the second element, some authorities speak of "management and control" rather than "exclusive control," but the terms have come to be viewed as interchangeable. In either case, the requisite control is a not a rigid standard, but a flexible one in which the key question is whether the probable cause of the plaintiff's injury was one which the defendant was under a duty to the plaintiff to anticipate or guard against. See *Jones v. Minster*, 261 Ill. App. 3d 1056, 1061 (1994); *Darrough v. Glendale Heights Community Hospital*, 234 Ill. App. 3d 1055, 1060 (1992). The traditional formulation of the doctrine also included a requirement that the injury occurred under circumstances indicating that it was not due to any voluntary act or neglect on the part of the plaintiff. *Gatlin v. Ruder*, 137 Ill. 2d at 295. Consistent with the principles of comparative fault followed in this state, however, a plaintiff is no longer required to plead and prove freedom from contributory negligence in order to make out a *prima facie* case under the doctrine of *res ipsa loquitur*. *Dyback v. Weber*, 114 Ill. 2d 232, 241 (1986).

As we have indicated, whether the *res ipsa* doctrine should apply in a given case presents a question of law. It is a question which must be decided in the first instance by the trial court. *Imig v. Beck*, 115 Ill. 2d 18, 27 (1986). That is so not only where the case sounds in ordinary negligence. It is also true where medical malpractice is alleged. See 735 ILCS 5/2–1113 (West 2004).

An action asserting negligence based on the theory of *res ipsa loquitur* may be challenged on the pleadings, as this one was. See *Greenberg v. Michael Reese Hospital*, 83 Ill. 2d 282, 294-96 (1980); *Walker v. Rumer*, 72 Ill. 2d 495, 501-02 (1978); see also *Collins v.*

*Superior Air-Ground Ambulance Service, Inc.*, 338 Ill. App. 3d 812 (2003). In this case, however, the challenge should have been rejected. Accepting as true the well-pleaded facts in plaintiff's amended complaint and the reasonable inferences that may be drawn from those facts, and construing the allegations in the complaint in the light most favorable to the plaintiff, we agree with the appellate court that the trial court erred when it dismissed plaintiff's *res ipsa loquitur* count on the pleadings prior to trial.

Organic material is sometimes susceptible to spontaneous combustion (see, *e.g.*, *City of Pana v. Central Washed Coal Co.*, 260 Ill. 111, 116 (1913); *Lake Shore Nitro-Glycerine Co. v. Illinois Central R.R. Co.*, 75 Ill. 394, 396 (1874)). So far as modern science has been able to ascertain, the human body is not. If a person catches fire, there must therefore be some external source of ignition, such as an open flame, extreme heat or electrical current. One needs no specialized medical knowledge to understand that allowing a patient restrained on a bed and left alone in a hospital emergency room to be exposed to an ignition source that sets him on fire, as plaintiff alleges happened here, is something that does not ordinarily happen in the absence of negligence. Plaintiff's complaint therefore sufficiently alleged the first element of the *res ipsa loquitur* doctrine.

The source of ignition has never been ascertained. As we have indicated, however, plaintiff alleges that he was unable to move and that no one else was present in the room. He was put in that room by defendants, the room was owned and maintained solely by the Hospital, and his condition was monitored and controlled exclusively by defendants. Whatever the particular agency or instrumentality that may have led to plaintiff's being set ablaze, it thus appears likely to have been under defendants' exclusive control. We note, moreover, that under Illinois precedent, plaintiff is not required to show that his injuries were more likely caused by any particular one of the defendants in order to proceed with his *res ipsa* claim, nor must he eliminate all causes of his injuries other than the negligence of one or more of the defendants. See *Collins v. Superior Air-Ground Ambulance Service, Inc.*, 338 Ill. App. 3d at 822-23. Plaintiff's complaint therefore also sufficiently alleged the second of the two elements necessary for application of the *res ipsa loquitur* doctrine.

-13-

Accordingly, the appellate court was correct to conclude that count III of plaintiff's complaint should not have been dismissed.

In urging this court to reach a contrary conclusion, defendants cite to decisions such as *Dyback v. Weber*, 114 Ill. 2d 232, 242-43 (1986), and *Bernardi v. Chicago Steel Container Corp.*, 187 Ill. App. 3d 1010, 1013 (1989), where applicability of the *res ipsa loquitur* doctrine was rejected under circumstances where the origin of a fire was uncertain. Unlike the matter before us, however, those cases did not turn on the sufficiency of the pleadings. They involved situations where evidence supported plausible explanations for the fire other than negligence by the defendant. In *Dyback*, where a house undergoing repair caught fire, the court noted the possibility of a lightning strike or the commission of arson. *Dyback*, 114 Ill. 2d at 243. In *Bernardi*, where a worker was fatally burned while priming the engine of a motorized vehicle, the evidence showed that the process of priming an engine by pouring gasoline into the carburetor, which is what the worker was doing when he was hurt, is dangerous even where ordinary care is exercised. Moreover, unlike the situation alleged to have existed here, the defendant in that case did not have exclusive control of the instrumentality which caused the injury. Control of or responsibility for the vehicle was divided between the defendant and the worker who was fatally burned. *Bernardi*, 187 Ill. App. 3d at 1022.

Defendants next argue that plaintiff should not have been permitted to invoke the *res ipsa* doctrine because he lacked testimony from a properly qualified and competent expert to substantiate the proposition that hospital patients in plaintiff's situation do not ordinarily catch fire absent negligence. In defendants' view, the acts or omissions asserted in this case were in the nature of "nursing negligence," and the only medical expert proffered by plaintiff was a doctor who was not competent under our court's decision in *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 121-23 (2004), to render an opinion on the standard of care applicable to the nursing profession. Permitting plaintiff to proceed under these circumstances would, according to defendants, be tantamount to creating a *res ipsa* exception to *Sullivan v. Edward Hospital*.

Plaintiff initially responds that our decision in *Sullivan* is inapplicable to this litigation because it was not decided until months

-14-

after the trial concluded. We must reject this contention. Although the trial was over by the time we announced our decision in *Sullivan*, plaintiff had filed a notice of appeal, and his cause remained pending on direct review in the appellate court. It is well established that decisions of our court normally apply retroactively to causes pending at the time they are announced, including cases on direct review in the appellate court. *Miller v. Gupta*, 174 Ill. 2d 120, 128 (1996).

The presumption that an opinion applies retroactively as well as prospectively can be overcome in two types of circumstances. First, the issuing court itself may expressly state that its decision will be applied prospectively only. *Aleckson v. Village of Round Lake Park*, 176 Ill. 2d 82, 86 (1997). That situation is not present here. *Sullivan* was not, by its terms, limited only to cases which followed it.

Second, a later court may, under certain circumstances, override the presumption by declining to give the previous opinion retroactive effect, at least with respect to the parties appearing before the later court. *Aleckson v. Village of Round Lake Park*, 176 Ill. 2d 82, 86 (1997). In considering whether a decision should not be applied retroactively, the later court will consider.

> "whether the decision to be applied nonretroactively establishes a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. If either of these criteria is met, the question of prospective or retroactive application will be answered by considering whether, given the purpose and prior history of the rule, its operation will be retarded or promoted by prospective or retroactive application and whether prospective application is mandated by a balance of equities." *Bogseth v. Emanuel*, 166 Ill. 2d 507, 515 (1995).

Our decision in *Sullivan* did not establish a new principle of law. The salient legal principles it articulated regarding the qualifications of health-care experts followed the analysis of the appellate court, whose judgment it affirmed. The appellate court's judgment had been filed the year before the trial in this case commenced and was therefore in effect at the time the circuit court was called upon to make its rulings here. Indeed, the appellate court's opinion in *Sullivan* was specifically discussed by the trial judge and counsel for the

-15-

parties. We further note that the appellate court's decision cannot, itself, be said to have established a new principle of law. As our discussion in *Sullivan* indicates, the appellate court's decision was fully in accord with the past precedent of our court. *Sullivan*, 209 Ill. 2d at 122-23.

Because establishing a new principle of law is a threshold requirement for limiting a new decision to prospective application (*Tosado v. Miller*, 188 Ill. 2d 186, 197 (1999)), and because *Sullivan* did not cross this threshold, we have no need to consider the additional factors applicable to the assessment of whether *Sullivan* should only be applied to cases which followed it. The presumption that the decision should be applied retroactively as well as prospectively has not been overcome, and the case before us is therefore subject to its principles.

Although we reject plaintiff's contention that *Sullivan* should not apply to this litigation, we agree with him that our decision in that case cannot be invoked as a basis for upholding the circuit court's dismissal of his *res ipsa* count. Defendants' charge that allowing plaintiff to go forward with that claim would be tantamount to creating a *res ipsa* exception to the principles set forth in *Sullivan* is wholly without merit.

A preliminary flaw in defendants' argument is that it presupposes that expert medical testimony is a prerequisite to invocation of the *res ipsa* doctrine. That is clearly not the case. To be sure, the determination as to whether the *res ipsa loquitur* doctrine should apply in a given case may be based on expert testimony. Nothing in Illinois law, however, makes expert testimony a prerequisite to reliance on the doctrine in every case. That is so even in medical malpractice actions. Under section 2–1113 of the Code of Civil Procedure (735 ILCS 5/2–1113 (West 2004)), a trial court is specifically authorized to rely upon *either* "the common knowledge of laymen, if it determines that to be adequate" *or* upon expert medical testimony. 735 ILCS 5/2–1113 (West 2004). For the reasons we have previously discussed, we believe this is one of those situations where the common knowledge of laymen is sufficient.

Next, as our opinion has indicated, defendants' *Sullivan* challenge is predicated on the evidence presented at trial. The problem with that is twofold. First, it fails to recognize that the *res ipsa* question was

decided at the pleading stage in the context of a motion to dismiss. A motion to dismiss under section 2–615 tests only the legal sufficiency of the complaint based on facial defects. *Tuite v. Corbitt*, 224 Ill. 2d 490, 509 (2006). It does not assess the underlying facts. See *Oliva v. Amtech Reliable Elevator Co.*, 366 Ill. App. 3d 148, 151 (2006). What the evidence presented at trial showed or failed to show is therefore irrelevant to the determination of whether defendants' motion to dismiss was properly granted.

Second, because plaintiff was precluded from invoking the *res ipsa* doctrine when count III was dismissed on the pleadings, he cannot be faulted for failing to buttress his *res ipsa* arguments with additional evidentiary support. In light of the circuit court's initial determination that plaintiff could not invoke the *res ipsa* doctrine, any attempts to present additional evidence regarding that doctrine would have been unavailing.

In addition to their arguments about expert testimony, defendants contend that the *res ipsa* count was properly stricken because plaintiff never introduced any evidence of what caused the fire and failed to establish that the instrumentality responsible for triggering the blaze was under their control. Again, however, these arguments are misguided. The sufficiency of the evidence is not germane to the determination of whether a count in a complaint was properly dismissed on the pleadings.

We note, moreover, that while reliance on the *res ipsa* doctrine may normally require that the injury can be traced to a specific cause for which the defendant is responsible, Illinois law also authorizes use of the doctrine where it can be shown that the defendant was responsible for all reasonable causes to which the accident could be attributed. See *Napoli v. Hinsdale Hospital*, 213 Ill. App. 3d 382, 388 (1991); see also W. Keeton, Prosser & Keeton §39, at 248 (5th ed. 1984). That is precisely the situation plaintiff claims to have been present here.

Similarly, Illinois law does not require a plaintiff to show the actual force which initiated the motion or set the instrumentality in operation in order to rely on the *res ipsa* doctrine. To the contrary, if the specific and actual force which initiated the motion or set the instrumentality in operation were known unequivocally, leaving no reason for inference that some other unknown negligent act or force

-17-

was responsible, the *res ipsa* doctrine could not even be invoked. See *Collgood, Inc. v. Sands Drug Co.*, 5 Ill. App. 3d 910, 916 (1972); see also 65A C.J.S. *Negligence* §759, at 555 (2000) ("The res ipsa loquitur rule aids the injured party who does not know how the specific cause of the event that results in his or her injury occurs, so if he or she knows how it comes to happen, and just what causes it *** there is no need for the presumption or inference of the defendant's negligence as afforded by the *** rule").

Some authorities have held that in order for the *res ipsa* doctrine to be employed, the defendant must have superior knowledge or means of knowing the cause of the accident. Under this view, if the plaintiff and the defendant have equal knowledge of the cause of the accident and equal ability to discover facts concerning it, the doctrine is inapplicable. 65A C.J.S. *Negligence* §750, at 532-33 (2000). The soundness of this view has been challenged. Prosser, for example, writes:

> "It is difficult to believe that this factor [*i.e.*, unequal knowledge and accessibility to evidence] ever can be controlling, or more than at best a makeweight. If the circumstances are such as to create a reasonable inference of the defendant's negligence, it cannot be supposed that the inference would ever be defeated by a showing that the defendant knew nothing about what had happened ***.
>
> ***
>
> The plaintiff's comparative ignorance of the facts in the type of cases under consideration no doubt provides some argument for the validity of the principle of res ipsa loquitur, and undoubtedly it has had some persuasive effect in making courts more willing to apply the doctrine. *** But it cannot be regarded as an indispensable requirement, and there are few cases in which it can be said to have had any real importance." W. Keeton, Prosser & Keeton on Torts §39, at 254-55 (5th ed. 1984).

The notion that a defendant's superior knowledge is a prerequisite to use of the *res ipsa* doctrine has been rejected by various jurisdictions (see 65A C.J.S. *Negligence* §750, at 534 (2000)) and by the Restatement (Second) of Torts. Section 328D, comment

-18-

*k*, of the Restatement echoes some of the points raised by Dean Prosser:

> "It frequently is said by courts that one basis for the application of the principle of res ipsa loquitur is the defendant's superior knowledge, or his superior opportunity to obtain it, as to how the event occurred. This statement usually is made as an additional reason for permitting the inference of negligence where it can otherwise be drawn, or for refusing to permit the inference where it cannot otherwise be drawn. Undoubtedly the fact that in res ipsa loquitur cases defendants in general have such superior knowledge, or access to it, has been a very persuasive factor in the development of the principle. Cases are, however, very few in which this has ever been the decisive factor. Obviously the inference of the defendant's negligence and responsibility may still be drawn in cases where the event is of a kind which does not usually occur without negligence and all reasonably probable causes were under the control of the defendant, even though it is quite clear from the facts that he does not know and cannot know what has happened. Such superior knowledge, or opportunity to obtain it, is therefore not a requirement for the application of the rule stated in this Section." Restatement (Second) of Torts §328D, Comment *k*, at 164 (1965).

In discussing when *res ipsa* can be invoked, the courts of this State have sometimes referred to situations in which "direct evidence concerning cause of injury is primarily within the knowledge and control of the defendant." *Metz*, 32 Ill. 2d at 449. To our knowledge, however, no Illinois decision has expressly addressed the superior-knowledge rule or held that showing superior knowledge by the defendant is a prerequisite to use of the doctrine. To the contrary, the established view in this state appears to be that a plaintiff is not required to establish that a defendant had superior knowledge of the facts or superior accessibility to the evidence in order to prevail in a negligence action based on *res ipsa loquitur*. See Illinois Pattern Jury Instructions, Civil, No. 22.01 (2006).

Whether the superior-knowledge rule is a sound principle of law and whether it should be adopted in Illinois are not matters we need

to resolve today. As we have mentioned at various points in this opinion, the *res ipsa* count was disposed of at the pleadings stage. Even if the superior-knowledge rule represented the law of Illinois, the pleadings themselves offer no possible basis for holding that plaintiff rather than the defendants had superior knowledge or means of knowing the cause of the accident. According to plaintiff's fifth amended complaint, plaintiff's ability to appreciate the circumstances around him was seriously diminished. He was extremely intoxicated, at risk of harm to himself, unable to protect himself from injury, and strapped down with four-point restraints.

The Hospital, by contrast, knew or could readily have ascertained every aspect of what transpired after plaintiff was brought to the emergency room. It owned and maintained the premises on which plaintiff was injured. It was responsible for the condition of the room where plaintiff was sequestered and, according to the complaint, the defendants were responsible for creating the conditions under which defendant was restrained and confined. They also had the ability to monitor plaintiff's situation and take appropriate action should problems arise. If anyone had superior knowledge of the cause of the accident or superior ability to discover facts concerning how the accident occurred, it would therefore appear to be defendants.[5]

On retrial, it will be incumbent upon plaintiff to persuade the jury that his *res ipsa loquitur* theory provides a valid basis for imposing liability on defendants. As discussed in this opinion, and as noted by the appellate court, the *res ipsa loquitur* doctrine is a species of circumstantial evidence. Like any other proof, it may be rebutted by the opposing party. If contrary evidence is proffered by defendants, the inference or presumption of negligence will not dissolve. Rather, it will remain to be considered with all the other evidence in the case and must be weighed by the jury against the direct evidence offered by

---

[5]Although we are concerned here only with the pleadings, the evidence adduced at trial suggests that it is very unlikely that the superior-knowledge rule will prove an impediment to plaintiff's use of the *res ipsa* doctrine. Plaintiff testified that he had no recollection of even being present at the Hospital on the night he was burned, much less how the fire began. In fact, he testified that he remembers nothing about the experience prior to waking up at Loyola several days later. That testimony was uncontradicted.

defendants. *Gatlin*, 137 Ill. 2d at 294, quoting *Metz*, 32 Ill. 2d at 448-50. Whether plaintiff will ultimately succeed in making his case with the jury is not a question that is properly before us. Our sole inquiry is whether the allegations in plaintiff's complaint were sufficient to state a cause of action for negligence based on the *res ipsa loquitur* doctrine. For the reasons we have just explained, we agree with the appellate court that they were.

In describing the events which occurred in the trial court, we have observed that plaintiff tendered *res ipsa loquitur* instructions at the conclusion of the case, notwithstanding the fact that the *res ipsa* theory had been eliminated from the litigation when the trial court dismissed count III of plaintiff's fifth amended complaint on the pleadings. Based upon the evidence that was ultimately adduced at trial, one might argue that the circuit court should have reconsidered its position and allowed plaintiff's *res ipsa* instructions to be read to the jury. The threshold for giving an instruction in a civil case is, after all, not a high one. Generally speaking, litigants have the right to have the jury instructed on each theory supported by the evidence. Whether the jury would have been persuaded is not the question. All that is required to justify the giving of an instruction is that there be some evidence in the record to justify the theory of the instruction. The evidence may be insubstantial. *LaFever v. Kemlite Co.*, 185 Ill. 2d 380, 406 (1998).

While the threshold for permitting an instruction in a civil case is modest, the standard for reversing a judgment based on failure to permit an instruction is high. The decision as to which jury instructions to use falls within the discretion of the trial court. A reviewing court will not disturb the trial court's determination unless the trial court has abused its discretion, and a new trial will be granted only when the refusal to give a tendered instruction results in serious prejudice to a party's right to a fair trial. See *Stift v. Lizzardo*, 362 Ill. App. 3d 1019, 1025-26 (2005).

Whether this standard has been satisfied in the case before us is an issue we need not reach. Plaintiff has not raised the failure to give the *res ipsa* instruction as an additional source of reversible error, and in light of our conclusion that plaintiff is entitled to a new trial in any event based on the dismissal of his *res ipsa* count, resolution of the question could have no possible effect on the outcome of the case.

-21-

In contesting the appellate court's judgments in this case, defendants have focused on the viability of plaintiff's *res ipsa* count and the applicability of our decision in of *Sullivan v. Edward Hospital*, 209 Ill. 2d 100 (2004). These, however, are not their only complaints. They also seek to raise an additional and distinct basis for challenging the appellate court's judgment, namely, that under any of the negligence theories asserted by plaintiff, they should have been granted a directed verdict.

Defendants' argument is untenable, both procedurally and substantively. Our court has long held that a verdict should be directed only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967). With respect to the theories of recovery at issue on this appeal, *i.e.*, plaintiff's claim based on the doctrine of *res ipsa loquitur* and his failure-to-search claim, this standard can have no application. The reason is obvious: the circuit court's rulings precluded plaintiff from presenting either of those theories to the jury. If the claims were not part of the case, the circuit court can scarcely be faulted for having failed to direct a verdict on them in defendants' favor, and we have no basis for holding that a directed verdict should be entered on them now.

We note, moreover, that while the circuit court made directed findings with respect to a number of specific issues in the case, defendants' request for a directed verdict was denied in all other respects. Defendants then proceeded to present evidence of their own. In civil as in criminal cases, a defendant who elects to present evidence after his or her motion for directed verdict has been denied is deemed to have waived any right to a directed verdict. *People ex rel. Kubala v. Woods*, 52 Ill. 2d 48, 54 (1972).

Defendants seek to avoid waiver by arguing that they should be allowed to raise any issue in support of the trial court's judgment. Whether that doctrine can properly be applied under the circumstances present here, where the judgment was based on a jury's verdict, is questionable. That is so because holding that a directed verdict should have been granted would not be an alternative basis for affirming what

the jury did. To the contrary, it would, as a technical matter, render the jury's deliberations and subsequent verdict a nullity.

Even if the question of defendants' entitlement to a directed verdict had been properly raised and preserved, it would fail on the merits. Defendants' argument that they were entitled to a directed verdict under any of the theories of recovery advanced by plaintiff is predicated on two points. The first is that plaintiff's failure to call an expert who met the requirements of our decision in *Sullivan* was fatal, as a matter of law, to his right to recovery. For the reasons we have just discussed, *Sullivan* is not a bar to plaintiff's claim based on the *res ipsa* doctrine. For reasons set forth later in this opinion, it is likewise not a fatal barrier to his failure-to-search claim.

Defendants' second argument is that because of the uncertainty regarding the origin of the fire, plaintiff cannot establish that anything defendants did or failed to do was a proximate cause of his injuries. As the discussion which follows will show, defendants' proximate cause argument is untenable. Proximate cause is ordinarily a question of fact for the jury to decide. See *Elliott v. Williams*, 347 Ill. App. 3d 109, 113 (2004). Under the circumstances present here, plaintiff should have been permitted to argue to the jury that defendants' failure to search him for contraband was a proximate cause of his injuries.

For the foregoing reasons, we reject the arguments raised by defendants that the judgment of the appellate court should be reversed. This, however, does not end our inquiry, for an additional challenge to the appellate court's judgment has also been raised by plaintiff. He contends that we should reverse the appellate court's judgment to the extent that it upheld the trial court's decision barring him from presenting evidence that defendants had deviated from the standard of care by failing to search him for contraband before they restrained him on the cart and left him unattended in the cast room.

In evaluating this claim, we begin by noting that no question has been raised as to plaintiff's right to assert it. Although plaintiff did not file a separate petition for leave to appeal, none was required. Plaintiff is entitled to raise the additional issue under Rule 318(a), which provides that in all appeals "any appellee, respondent, or coparty may seek and obtain any relief warranted by the record on appeal without having filed a separate petition for leave to appeal or notice of cross-appeal or separate appeal." 155 Ill. 2d R. 318(a). This court has

invoked Rule 318(a) in finding that allowance of one party's petition for leave to appeal brings before this court the other party's requests for cross-relief. See *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 242 (2006); *Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.*, 186 Ill. 2d 472, 490 (1999). Defendants do not dispute that it is appropriate for us to reach the same conclusion here.

In order to properly analyze plaintiff's contention, it is important to place it in its appropriate context. The question of defendants' failure to search plaintiff for contraband was mentioned twice in plaintiff's fifth amended complaint. It was one of the specific forms of negligence asserted in count I. It was also listed in count III, the *res ipsa* count, as being among the conditions under the shared control of defendants which may have led to the fire which caused plaintiff's injuries.

The argument that defendants should be held liable for failing to search plaintiff was advanced by plaintiff as a counter to defendants' theory that because plaintiff was alone in the cast room when the fire started and because a lighter was subsequently found on the cast-room floor, plaintiff must have used the lighter to ignite the blaze and he, rather than defendants, was therefore solely responsible for his injuries. As we have described, plaintiff attempted to foreclose defendants from pursuing this theory by filing a motion *in limine* to bar them from arguing that plaintiff himself was negligent or that his negligence caused or contributed to his injuries. Plaintiff advanced two grounds in support of the motion. First, he contended that even if he did start the fire, that action was not the proximate cause of his injuries as a matter of law. Rather, his injuries were caused by defendants' failure to follow the Hospital's policy regarding the procedures to be followed when patients are restrained, including the requirement that they be searched for contraband. Second, he argued that he was so intoxicated at the time of the accident that he was, as a matter of law, incapable of exercising due care for his own safety.

Defendants, for their part, not only opposed plaintiff's motion, they submitted a motion *in limine* of their own asking that plaintiff be barred from presenting "any testimony that something other than the plaintiff caused the fire which injured him." As grounds for that motion, defendants argued that "[a]ny evidence, testimony, argument or reference proffered by plaintiff that someone or something other

than Almon Heastie caused the fire would be entirely speculative, contrary to all the evidence, and prejudicial to the defendants."

Defendants also filed additional motions *in limine* in which they sought to bar plaintiff from presenting expert testimony from a medical doctor named Segal, from a registered nurse named Houdek, or from anyone else to the effect that defendants had deviated from the standard of care by, among other things, not performing a contraband check on him. The basis for these motions had nothing to do with the witnesses' qualifications. Rather, defendants asserted that the testimony should not be allowed because neither Segal nor Houdek had an opinion as to how the fire had started, they could not say what such a contraband search would have disclosed, and neither they nor any other expert had opined that defendant's alleged deviations from the standard of care were the proximate cause of plaintiff's injuries.

The circuit court denied plaintiff's motion *in limine* regarding his own alleged negligence and allowed defendants' motion barring plaintiff from presenting "any testimony that something other than the plaintiff caused the fire which injured him." The court also granted the defendants' motions *in limine* barring testimony from Houdek, Segal or others concerning the failure to search for contraband. In ruling as it did, the circuit court agreed with defendants' contention that there was no evidence to support the proposition that their failure to search plaintiff for contraband was the proximate cause of his injuries. As noted previously in this opinion, plaintiff's motions for reconsideration and for a mistrial were denied. The result was that plaintiff was unable to present his failure-to-search theory to the jury.

When the appellate court initially reviewed this case, it agreed with plaintiff that the circuit court's refusal to permit him to submit his failure-to-search theory to the jury was error. The appellate court reasoned that if defendants were allowed to argue that plaintiff set himself on fire with his own lighter, then plaintiff should have been permitted to advance his claim that defendants should have searched plaintiff's person for such potentially dangerous items before restraining him and that their failure to do so constituted actionable negligence.

One member of the appellate court dissented. The dissenting justice rejected the majority's resolution of this issue for two reasons.

The first was relevance. The dissenting justice observed that plaintiff's attempt to present evidence of the failure to search had initially been rejected by the circuit court because plaintiff denied that he had started the fire or that he had ever possessed the lighter. If, as plaintiff asserted, the lighter was not his and he did not use it to start the fire, then whether or not he was searched was immaterial. If there was no lighter, the search would have yielded nothing and the failure to search could not have been a proximate cause of plaintiff's injuries.

The dissent further noted that plaintiff also sought to present evidence on the failure to search by way of rebuttal. According to the dissenting justice, that was not appropriate either. Citing *Hoem v. Zia*, 239 Ill. App. 3d 601, 618 (1992), *aff'd*, 159 Ill. 2d 193 (1994), the dissenting justice reasoned that rebuttal evidence is evidence offered to explain, repel, contradict or disprove evidence presented by the defendant. What plaintiff sought to rebut was evidence presented during defendants' case in chief that plaintiff had admitted to another party that he had set himself on fire. The dissenting justice wrote, however, that whether defendants breached a standard of care by failing to search plaintiff for contraband was not something which helped explain, repel, contradict or disprove the contention that plaintiff was responsible for setting the fire himself.

The second basis for the dissenting justice's view concerned the competency of plaintiff's evidence. The dissenting justice held that the witnesses called by plaintiff, including Bernard Presutti, a former hospital administrator, and Dr. Marshall Segal, a medical doctor and licensed attorney, were not qualified to address the standard of care for emergency-room nurses and other personnel under this court's decision in *Sullivan v. Edward Hospital*, 209 Ill. 2d 100 (2004). The dissenting justice therefore concluded that the circuit court's judgment should have been affirmed.

As we have already described, defendants petitioned for leave to appeal. Although their petition was denied, this court entered a supervisory order directing the appellate court to vacate its judgment and reconsider its decision in light of *Sullivan v. Edward Hospital*, 209 Ill. 2d 100 (2004). When the appellate court undertook that reconsideration, it did not change its position with regard to the *res ipsa* issue. The only substantive change it made to its decision was to adopt the position advanced by the dissenting judge in the original

proceeding regarding the competency of Presutti and Segal. The majority opined that because Presutti and Segal were not licensed nurses, they were not competent under *Sullivan* to offer testimony regarding the standard of care of nurses. The court therefore concluded that the circuit court had not erred in precluding plaintiff from pursing his claim that defendants had deviated from the standard of care by failing to search him for contraband.

In reviewing this aspect of the appellate court's decision, we begin by noting that, in a very narrow sense, the appellate court was correct. Because neither Presutti nor Segal was a licensed nurse, it is true that neither was competent under *Sullivan* to testify regarding the standard of care governing the nursing profession, nor were they competent to offer opinions as to whether the defendant nurses in this case had violated that standard of care.

The problem with the appellate court's analysis is that it attempts to resolve the dispute over plaintiff's failure-to-search theory based solely on the qualifications of the particular witnesses. That approach is unsound for a number of reasons. First, it assumes that Segal and Presutti were the only experts plaintiff could have called to testify regarding whether defendants' failure to search violated the applicable standard of care. How the appellate court reached this conclusion is unclear. The record suggests that plaintiff could present alternative witnesses to speak to that question and would be willing to do so, if necessary, on retrial.

Second, the appellate court found Segal and Presutti deficient under our decision in *Sullivan* because neither of them was a registered nurse. Their lack of nursing credentials, however, was relevant only to their competence to address issues of medical malpractice involving nurses. The defendants in this case were not limited to nurses. They also included the Hospital itself and nonnursing hospital personnel.

Third, while nurses were an integral part of the events leading up to the accident in which plaintiff was injured, the fact that these and other medical professionals were involved does not, in itself, mean that expert medical testimony was necessary to establish the standard of care. Not every injury sustained by a patient in a hospital results from healing art malpractice. See *Giegoldt v. Condell Medical Center*, 328 Ill. App. 3d 907, 911 (2002). Hospitals also have administrative

and managerial duties toward patients, a breach of which may subject them to liability. *Advincula v. United Blood Services*, 176 Ill. 2d 1, 28 (1996).

*Edelin v. Westlake Community Hospital*, 157 Ill. App. 3d 857 (1987), involved such a situation. In that case, a hospital patient was allowed to leave the hospital's premises without an escort following her discharge. On the way out, she slipped and fell in the hospital's lobby, injuring herself. The appellate court ruled that expert medical testimony was not necessary to sustain the injured patient's cause of action because, among other things, the gravamen of her claim was not negligence in furnishing medical treatment, but rather the breach of an administrative duty to provide discharged patients with an escort according to the hospital's own policy. *Edelin v. Westlake Community Hospital*, 157 Ill. App. 3d at 862.

A similar case is *Mooney v. Graham Hospital Ass'n*, 160 Ill. App. 3d 376 (1987), where a physician noted on the chart of a postoperative hospital patient that the patient was permitted to get up and go to the bathroom whenever she wished. When the patient attempted to do so, she slipped on a pool of liquid that had accumulated on the floor of her hospital room and fell, injuring herself. The patient subsequently sued the hospital to recover damages for her injuries. The hospital sought dismissal of the patient's complaint on the ground that she had failed to provide a supporting affidavit from a health professional required by section 2–622 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2–622) for cases involving healing-art malpractice. The circuit court denied that motion and the appellate court affirmed. It held that plaintiff's cause of action implicated the hospital's obligations as owner or occupier of the premise rather than as a provider of medical treatment. The action therefore it sounded in ordinary negligence rather than healing-art malpractice, and the requirement of certification by a health professional was inapplicable. See also *Block v. Michael Reese Hospital & Medical Center*, 93 Ill. App. 3d 578 (1981) (hospital liable in ordinary negligence for injuries sustained by a hospital patient who was left unattended after undergoing diagnostic tests in violation of a hospital policy, adopted for the safety and convenience of patients, which required that patients be escorted back to their rooms following tests).

In our view, plaintiff's failure-to-search claim likewise falls within the category of ordinary negligence rather than healing-art malpractice. Whether a hospital patient should be restrained involves the exercise of medical judgment. *Eads v. Heritage Enterprises, Inc.*, 204 Ill. 2d 92, 100 (2003); see *Giegoldt*, 328 Ill. App. 3d at 910. Whether the patient should be searched for potentially dangerous contraband before being restrained and sequestered does not.

Prerestraint contraband searches are wholly unrelated to the diagnosis or treatment of a patient's condition. They serve no medical function of any kind. Their purpose is purely safety related, specifically, to insure that a patient who is going to be restrained and then left alone will not have access to implements which may be used to effect an escape, inflict harm on himself or others, or destroy property. Such a purpose bears on a hospital's administrative and management functions, not its delivery of medical care.

In fulfilling its administrative and managerial duties, a hospital must conform to the standard of "reasonable conduct" in light of the apparent risk. *Advincula*, 176 Ill. 2d at 29. Expert testimony is not necessarily required to determine whether administrative or managerial negligence has occurred. *Jones v. Chicago HMO, Ltd. of Illinois*, 191 Ill. 2d 278, 296 (2000). Whether a hospital has been reasonably careful may be shown by a wide variety of evidence, including, but not limited to, expert testimony, hospital bylaws, statutes, accreditation standards, custom and community practice. *Advincula*, 176 Ill. 2d at 29.

In advancing his position here, plaintiff cited the failure of the hospital and its personnel to adhere to written hospital policy requiring patients to be searched for contraband prior to being placed in restraints. This was appropriate. Our precedent makes clear that a hospital's customs or policies are among the types of information which may be presented to the jury to assist it in determining a hospital's duty to a patient. While such policies are not determinative of the standard of care, the failure of a hospital to follow its policies can be evidence of a breach of the hospital's duty to a patient. See *Greenberg v. Michael Reese Hospital*, 83 Ill. 2d 282, 292-93 (1980); *Darling v. Charleston Community Memorial Hospital*, 33 Ill. 2d 326, 331-32 (1965).

Just as medical testimony was not a prerequisite to plaintiff's failure-to-search claims against the Hospital, it was not necessary to sustain plaintiff's failure-to-search claims against the various medical professionals involved in this litigation. Whether expert medical testimony is necessary in a given case depends on whether ascertaining the applicable standard of care, determining whether there was a deviation from that standard, and evaluating whether there was an injury proximately caused by that deviation require consideration of knowledge, skill, or training in a technical area outside the comprehension of a lay person. See *Prairie v. University of Chicago Hospitals*, 298 Ill. App. 3d 316, 321 (1998). Expert testimony is not required if the health-care provider's conduct is so grossly negligent or the treatment so common that a layman could readily appraise it (*Voykin v. Estate of DeBoer*, 192 Ill. 2d 49, 59 (2000)) or where the act alleged to be negligent is not an implicit part of the medical procedure (see *Jones v. Dettro*, 308 Ill. App. 3d 494, 498 (1999)).

This is such a case. Whether a contraband search should be conducted before a patient is restrained and sequestered is not a determination for which any specialized training or expertise is necessary. Under the Hospital's policy, the only patients subject to involuntary mechanical restraint are those exhibiting behavior which poses a threat of personal injury to them or others or which may lead to the destruction of property. Whenever a patient is so agitated that he poses a danger to himself and others, as the plaintiff in this case unquestionably was, basic common sense dictates that before he is tied down and left alone, any implements he could use to harm himself or facilitate his escape should be removed from his person. Restraints, after all, are not foolproof. In the struggle to apply them, hospital personnel may not tighten them sufficiently. Even tight restraints may be loosened by a sufficiently powerful, violent or persistent patient. Pockets or other hiding places may then be reached and dangerous implements accessed. The potential for disaster is exacerbated because, when sequestered, the patient will have the opportunity to act without being observed by others.

One need not be a doctor, a nurse or any other kind of health provider to appreciate these risks. Nor is any special medical knowledge necessary to realize that such risks can be readily avoided simply by searching the patient for contraband before he is tied down

and left alone. These are matters that a lay person could readily understand. As a result, the trial court's decision to bar plaintiff from advancing a failure-to-search theory cannot be justified on the grounds that witnesses proffered by plaintiff were not competent under our decision in *Sullivan v. Edward Hospital*, 209 Ill. 2d 100 (2004). To the extent the appellate court held otherwise, its judgment cannot be sustained.

The appellate court's judgment likewise cannot be sustained under the rationale actually advanced by defendants and upon which the circuit court relied, namely, that because plaintiff himself could produce no evidence establishing that he was carrying a lighter at the time he was restrained and left unattended in the cast room, he was precluded from claiming that defendants' failure to search him for contraband was a proximate cause of his injuries under any negligence theory. Although the dissent from the appellate court's original decision in this case found this theory persuasive, it cannot withstand scrutiny.

It is true, of course, that in any negligence action, the plaintiff bears the burden of proving not only that defendant was under a duty and breached it, but also that defendant's breach of duty proximately caused plaintiff's injuries. *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 93 (1995). It is also true that the plaintiff in this case adduced no evidence himself to prove that he was carrying a lighter at the time he was involuntarily restrained. The record makes clear, however, that at the same time defendants sought to block plaintiff's failure-to-search claim on the grounds that he could not prove that he was carrying the lighter at the time he was injured, defendants themselves made the existence of that lighter and its presence on plaintiff's person the cornerstone of their defense that plaintiff alone was solely responsible for his injuries. If defendants were allowed to make the case that there was a lighter and that plaintiff could still reach it despite being restrained, we fail to see any reason why plaintiff should not, in turn, have been permitted to use the facts adduced or admitted by defendants to buttress his alternative theory of recovery that the failure to search him for contraband was a proximate cause of his injuries. Facts, after all, do not belong only to the party who proves them. Were it otherwise, admissions by an adverse party could

not be used by a plaintiff to meet his or her burden of proof, and the presentation of evidence would be needlessly duplicative.

The trial court in this case was concerned that parties to litigation ought not be allowed to take factually inconsistent positions in arguing their claims to a jury. The court's sensitivity to consistency, however, was not applied in an evenhanded way. If defendants were allowed to argue that plaintiff was carrying the lighter and used it to set himself on fire, as they were, then consistent with that view, they could scarcely deny the possibility that a search of plaintiff's person might have disclosed the presence of the lighter and prevented the fire from occurring. Yet, the trial court's rulings allowed them to do just that.[6] In fact, by ruling *in limine* that plaintiff was barred from "presenting any testimony that something other than the plaintiff caused the fire which injured him," the circuit court insulated defendants from having to answer any charge that they were in any way culpable for plaintiff's immolation. We think it no exaggeration to say that the court's ruling was tantamount to granting a directed verdict before any evidence had even been presented. Neither the Code of Civil Procedure (735 ILCS 5/1–101 *et seq.* (West 2004)) nor the rules of our court countenance such a procedure.

Wholly aside from that, the circuit court's concerns over consistency were unfounded. During the trial, plaintiff did not attempt to both disclaim and claim the lighter at the same time. His position, which we have discussed before, was that he had no knowledge of the lighter and there was no evidence to link it to him, but that if the jury believed defendant's theory that he used the lighter to set himself on fire, he was able to do so only because defendants were negligent in failing to search him for contraband and monitoring in accordance with Hospital policy. There is no inconsistency in this.

Moreover, to the extent that plaintiff's position could be perceived as containing some inconsistency, that should not have

---

[6]Plaintiff's counsel pointed out the inequity in this and argued at trial that if he could not make the case that defendants' failure to conduct a contraband search was a cause of his injuries, then defendants should not be allowed to argue that plaintiff had set himself on fire. The trial court expressly rejected that argument.

barred him from proceeding with his failure-to-search claim. Illinois law unquestionably allows litigants to plead alternative grounds for recovery, regardless of the consistency of the allegations, as long as the alternative factual statements are made in good faith and with genuine doubt as to which contradictory allegation is true. See *Bulatovic v. Dobritchanin*, 252 Ill. App. 3d 122, 127 (1993). Illinois law likewise permits parties to argue in the alternative, even when such arguments are based on inconsistent facts. See *Fitchie v. Yurko*, 212 Ill. App. 3d 216, 224 (1991). Where, as here, the facts are controverted, determining which, if any, of the possible theories is meritorious is a question for the trier of fact. The circuit court therefore erred when it precluded plaintiff from presenting his failure-to-search claim to the jury.

Contrary to the view expressed by the dissenting appellate court justice in the initial appeal of this case, the circuit court's refusal to allow plaintiff to proceed on his failure-to-search claim cannot be justified on the grounds that it involved an inappropriate use of rebuttal evidence. Plaintiff specifically pled the failure to search in his complaint and sought to make it part of his case in chief. When the circuit court thwarted that effort, but then permitted defendants to make the case that defendant had set himself on fire with the lighter and was solely responsible for his injuries, plaintiff sought to persuade the circuit court that its original view was wrong and that, in light of defendants' evidence, he should in the end be permitted to present his theory that defendants should be held liable for having failed to search him, as Hospital policy required. Although plaintiff's counsel used the term rebuttal in making this final plea, it was more in the nature of a request for reconsideration, a request which the circuit court had the authority to allow.

CONCLUSION

For the foregoing reasons, we agree with the appellate court that the circuit court erred in dismissing plaintiff's *res ipsa loquitur* count on the pleadings. We reject the appellate court's determination that circuit court was correct when it barred plaintiff from pursuing his claims that defendants' should be held liable for failure to search him for contraband. The judgment of the appellate court is therefore affirmed in part and reversed in part, and the cause is remanded to the

circuit court for a new trial. On retrial, plaintiff's cause of action shall be limited to the claims which were the subject of this appeal, specifically, that defendants were negligent for failing to search him for contraband as alleged in count I of his fifth amended complaint and, in the alternative, that they were negligent based on the doctrine of *res ipsa loquitur* as alleged in count III of his fifth amended complaint.

> *Appellate court affirmed in part*
> *and reversed in part;*
> *cause remanded with directions.*