# Illinois Official Reports

## Appellate Court

---

### *Mobley v. Tramco Transmission, Inc.*, 2014 IL App (1st) 122123

---

| | |
|---|---|
| Appellate Court Caption | MICHELLE MOBLEY and VALERIE MOBLEY, Plaintiffs-Appellants, v. TRAMCO TRANSMISSION, INC., an Illinois Business Corporation, d/b/a Tramcar Transmission, Defendant-Appellee. |
| District & No. | First District, Sixth Division<br>Docket No. 1-12-2123 |
| Filed | May 16, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action alleging that defendant violated the Consumer Fraud and Deceptive Business Practices Act based on its violation of the Automotive Repair Act in connection with work on the transmission of plaintiffs' automobile, the denial of plaintiffs' motion for a new trial was reversed and the cause was remanded for a new trial, since the central issue in the case was whether defendant had the right to claim a possessory lien on the vehicle even though it violated the Automotive Repair Act by performing unauthorized work without providing a written estimate and an invoice itemizing the work performed, and under the circumstances, the trial court's refusal to give plaintiffs' proposed instruction based on section 75 of the Automotive Repair Act was reversible error. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-M1-125438; the Hon. Sidney A. Jones III, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |

Counsel on Appeal

James A. Smith, of Law Offices of James A. Smith, of Chicago, for appellants.

Michael H. Shin, of Law Offices of Michael H. Shin, of Chicago, for appellee.

Panel

JUSTICE HALL delivered the judgment of the court, with opinion. Presiding Justice Rochford and Justice Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiffs Valerie Mobley and her daughter Michelle Mobley appeal from the judgment entered on the jury's verdict dismissing their claims against defendant Tramco Transmission, Inc. (Tramco), d/b/a Tramcar Transmission. Plaintiffs also appeal the jury's verdict finding in favor of Tramco and against Michelle Mobley on Tramco's counterclaim against plaintiffs. For the reasons that follow, we reverse and remand for a new trial.

¶ 2     The following background facts and summary of testimony are taken from the bystander's report and the record filed on appeal. This case involves a dispute over matters relating to the alleged unauthorized work performed on the automobile transmission in a 1992 Subaru SVX coupe. The vehicle was purchased by Valerie Mobley and titled in Michelle Mobley's name. Michelle was the principal driver.

¶ 3     In February 2009, the Subaru developed transmission problems. Plaintiffs searched on the Internet for a repair shop and found a website called "Best Transmissions," which represented that it had nationwide repair facilities. Best Transmissions was described as a broker that refers auto repair jobs to various transmission shops such as Tramco. Valerie called the phone number listed on the website and spoke with a salesman who informed her that a neighborhood shop would do the repair work on her vehicle, that no work would be done without a prior estimate and customer authorization, and there would be no charge in the event she decided not to have the work done.

¶ 4     On February 5, 2009, plaintiffs received an email from Best Transmissions which contained an agreement for authorization of work. Michelle signed the agreement and Best Transmissions made arrangements to tow the Subaru for repairs. The agreement indicated that the price for a transmission repair job not involving "hard parts" would be $1,397, which included a brokerage fee, a soft parts rebuild, O-rings, gaskets, and reseal and springs.

¶ 5     On February 6, 2009, a tow truck came to take the Subaru. Valerie claimed the tow men would not tell her where they were taking the vehicle. On February 9, 2009, Valerie had a telephone conversation with a person at Best Transmissions named "Ron," who provided her with the phone number of the repair shop where the Subaru was towed. Valerie did a reverse check on the phone number and discovered it was associated with Tramco, located at 5950

N. Milwaukee Avenue, in Chicago, Illinois. Tramco was located almost 30 miles from where plaintiffs lived in Lisle, Illinois. Valerie claimed it was important to her that the repair shop be "local." From her perspective, Tramco was not local.

¶ 6        On February 10, 2009, Valerie had a telephone conversation with a man who identified himself as Gary Amelong, foreman of the Tramco repair shop. Valerie asked him why her vehicle had been towed to his repair shop when she lived in Du Page County. Mr. Amelong responded that all questions regarding the vehicle had to be directed to Best Transmissions and that his function was limited to repairing the transmission and collecting payment from the customer. He stated he could not speak with Valerie because she was not a customer of Tramco, she was a customer of Best Transmissions. Valerie then instructed Mr. Amelong not to perform any work on her vehicle and informed him that she wanted to arrange for the vehicle to be picked up.

¶ 7        Valerie claimed that several times between February 10, 2009 and February 14, 2009, she unsuccessfully attempted to contact personnel at both Tramco and Best Transmissions to arrange for the return of her vehicle. On February 14, 2009, she received an email from "Transmission Citi, d/b/a Best Transmissions." The email contained a proposed "Total Price Agreement," stating that the total price of the repair would be $3,947 or $4,822, "depending on customer quickness to order parts." The proposal required the plaintiffs to make an immediate deposit of $2,825 or $3,700, "depending on customer." The proposal stated the plaintiffs would be required to pay a storage charge of $39 per day unless they approved the proposal within 24 hours. If the plaintiffs did not accept the proposal, there would be a charge of between $600 and $900 for removing, taking apart the transmission, and calling and getting prices on the parts.

¶ 8        Valerie also received an email from an individual named Steven Hoffman at "transmissioncitisupport.com." The email stated that if the plaintiffs did not agree to have the repair estimated in the proposal performed, they would be required to pay "shop charges" of $690, plus additional charges for towing, added labor, and materials. Valerie stated that when she agreed to let Best Transmissions tow the Subaru for repairs, she was not told anything about "shop charges."

¶ 9        Valerie stated that when she received the proposed "Total Price Agreement" and the email from Steven Hoffman, she drafted a letter dated February 14, 2009, which she faxed and mailed by certified mail to Cary Hadjuk, the president and owner of Tramco. In the letter, Valerie recited the events leading up to her receipt of the proposal and email. She also stated that she and her daughter would not pay any money to Tramco, Best Transmissions, or Transmission Citi, and demanded that arrangements be made for the return of the Subaru by February 16, 2009.

¶ 10        In a telephone conversation held on February 17, 2009, Mr. Hadjuk told Valerie that Tramco would not release the Subaru until plaintiffs paid for work done and that Tramco intended to take a lien against the vehicle. The next day, Valerie sent Mr. Hadjuk a letter by fax and regular mail summarizing their prior telephone conversation and accusing Tramco of illegally holding her vehicle.

¶ 11    Plaintiffs rented a replacement vehicle, and later in March 2009, purchased a used 2003 Volkswagen Passat (total price $7,650.13) because they were not sure when, or if, they would get the Subaru back. Valerie stated there was no subsequent communication between plaintiffs and Tramco until April 2009, when she received a telephone call from Mr. Amelong informing her that Tramco no longer had a relationship with Best Transmissions. He was prepared to repair the Subaru's transmission for $2,800. Valerie declined the offer and asked for return of the Subaru. Mr. Amelong responded, "When can I have my money?"

¶ 12    On May 7, 2009, Valerie received a telephone call from Mr. Amelong requesting that she pick up the Subaru and pay Tramco towing charges of $250. Valerie responded that her original offer to pay the towing charges had been declined and she was unwilling to pay the charges now. The next day, Valerie received a telephone call from Mr. Amelong informing her that Tramco needed the space and was prepared to release the Subaru if she agreed to pay the towing charges back to her house. Valerie agreed.

¶ 13    On May 9, 2009, Valerie went to Tramco and arranged for a tow truck to retrieve her Subaru. Valerie claimed an employee of Tramco told her that the Subaru's transmission was in the vehicle's trunk. When the Subaru arrived at her house, she discovered the transmission was missing. On June 23, 2009, Valerie sent a letter to Tramco demanding the transmission be returned. The transmission was never returned.

¶ 14    Valerie stated that neither she nor her daughter Michelle ever gave Tramco authorization to perform work on the Subaru. Valerie claimed Tramco never provided her with an estimate of the cost for repairs to the Subaru.

¶ 15    Mr. Hadjuk stated that when Tramco receives a referral from Best Transmissions, he views Best Transmissions as the customer. Mr. Hadjuk stated that on February 6, 2009, Tramco and Best Transmissions entered into a "Shop Agreement" to repair the Subaru's transmission. He stated that although he did not receive authorization from plaintiffs to work on the transmission, he received the authorization from Best Transmissions, whom he viewed as his customer.

¶ 16    Mr. Hadjuk stated that Tramco prepared an estimate of costs for repairs to the Subaru, which became the basis for the proposed "Total Price Agreement." Best Transmissions sets the final price. He claimed Tramco did not return the Subaru to plaintiffs prior to June 23, 2009, because Tramco had not been paid for its labor in disassembling and diagnosing the Subaru's transmission.

¶ 17    Mr. Hadjuk stated he prepared an invoice addressed to Valerie Mobley for $3,160, the amount of the counterclaim. He maintained he put the invoice in a drawer, but never presented it to plaintiffs. Mr. Hadjuk stated that when the plaintiffs removed their Subaru from Tramco's premises, he believed that was the end of the matter, until the plaintiffs filed their lawsuit. He stated that without a working transmission, the Subaru was worthless; it was worth about $6,000 with a functioning transmission.

¶ 18    Plaintiffs filed an amended complaint against Tramco alleging it performed unauthorized work on the Subaru's transmission, sought to have them pay for the unauthorized work, and then refused to return the vehicle unless they paid for the unauthorized work. Plaintiffs

- 4 -

brought a claim against Tramco for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2010)), premised on alleged violations of the Automotive Repair Act (815 ILCS 306/1 *et seq.* (West 2008)). Plaintiffs also brought a claim against Tramco for common law conversion. Tramco filed a counterclaim against plaintiffs for towing costs, labor costs associated with disassembling and diagnosing the transmission problems, and for storage fees.

¶ 19    Following a jury trial, the jury returned a verdict in favor of Tramco on all counts. In regard to Tramco's counterclaim against plaintiffs, the jury found in favor of Valerie Mobley, but against Michelle Mobley in the amount of $835. The trial court denied plaintiffs' motion for judgment notwithstanding the verdict or for a new trial.

¶ 20    Plaintiffs now appeal the jury's verdicts in favor of Tramco. Plaintiffs raise a number of issues on appeal. However, we believe the dispositive issue is whether the trial court erred in refusing to give a jury instruction proposed by plaintiffs that was based on section 75 of the Automotive Repair Act, entitled, "Lien barred" (815 ILCS 306/75 (West 2008)).[1] We hold the trial court committed reversible error by failing to give the proposed jury instruction.

¶ 21                                    ANALYSIS

¶ 22    The threshold for giving a jury instruction in a civil case is not high. *Heastie v. Roberts*, 226 Ill. 2d 515, 543 (2007). Litigants generally have the right to have the jury clearly and fairly instructed on each theory supported by the evidence. *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 100 (1995). "All that is required to justify the giving of an instruction is that there be some evidence in the record to justify the theory of the instruction." *Heastie*, 226 Ill. 2d at 543. The evidence may be slight or insubstantial. *Heastie*, 226 Ill. 2d at 543; *Leonardi*, 168 Ill. 2d at 100.

¶ 23    The decision whether to give or deny a tendered jury instruction is within the discretion of the trial court. *Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 549 (2008). The refusal to give a tendered instruction will result in a new trial only where the refusal results in serious prejudice to a party's right to a fair trial. *Heastie*, 226 Ill. 2d at 543.

¶ 24    Plaintiffs' proposed jury instruction read in relevant part:

"A motor vehicle repair facility that fails to comply with Sections 15, 20, 25, 30, 35, 40, 45, 50, 55, or 60 [of the Automotive Repair Act] is barred from asserting a possessory or chattel lien for the amount of the unauthorized parts or labor upon the motor vehicle or component.

Whether the defendant failed to comply with Sections 15, 30 or 50, as claimed by the Plaintiffs, is for you to determine, based on your consideration of the evidence."

---

[1]Section 75 of the Automotive Repair Act states: "A motor vehicle repair facility that fails to comply with Section 15, 20, 25, 30, 35, 40, 45, 50, 55, or 60 is barred from asserting a possessory or chattel lien for the amount of the unauthorized parts or labor upon the motor vehicle or component." 815 ILCS 306/75 (West 2008).

- 5 -

¶ 25    Plaintiffs contend a key issue in the case is whether Tramco was entitled to assert a possessory lien against their vehicle, even though Tramco allegedly violated section 30 of the Automotive Repair Act by performing unauthorized work on the vehicle's transmission, violated section 15 of the Act by failing to provide plaintiffs with a written estimate of the costs of repair, and violated section 50 of the Act by failing to provide plaintiffs with an invoice itemizing work performed on the transmission.[2]

¶ 26    Plaintiffs claim they requested the instruction to support their theory that if Tramco was found to be in violation of these specified sections of the Automotive Repair Act, then it would have been barred by section 75 of the Act from asserting the lien against their vehicle. Plaintiffs assert that without the instruction, "the jury could well have believed that Tramco had violated the Automotive Repair Act in one or more respects, and yet still have been entitled to maintain a possessory lien." Plaintiffs contend the trial court's refusal to give the proposed jury instruction was an abuse of discretion and deprived them of their right to have the jury instructed on their theory of the case as supported by the evidence. We agree.

---

[2]Section 30 of the Automotive Repair Act states: "Consumer's authorization of repairs or other action. After receiving the estimate, the owner or the owner's agent may (i) authorize the repairs at the estimate of cost and time in writing, (ii) request the return of the motor vehicle in a disassembled state, or (iii) request that the vehicle be assembled in reasonably the same condition as when released to the motor vehicle repair facility, in which case the motor vehicle repair facility shall make the motor vehicle available for possession within 3 working days after the time of request, unless parts are not available, making additional time necessary. The motor vehicle repair facility may receive payment for only those items on the schedule of charges to which the facility is entitled." 815 ILCS 306/30 (West 2008).

Section 15 of the Automotive Repair Act states in relevant part: "(a) Disclosures required. No work for compensation that exceeds $100 shall be commenced without specific authorization from the consumer after the disclosures set forth in this Section. (b) Estimated costs. Every motor vehicle repair facility shall either (i) give to each customer a written estimated price for labor and parts for a specific repair and shall not charge for work done or parts supplied in an amount that exceeds the estimate by more than 10% without oral or written consent of the consumer or (ii) give to each consumer a written price limit for each specific repair and shall not exceed that limit without oral or written consent of the consumer. Either option shall include an estimate of the time necessary to complete the repair, if in excess of one working day. The estimate shall include the total costs to repair the vehicle. Estimates shall include all charges to be paid by the consumer to complete the repair, including any charges for estimates and diagnostics." 815 ILCS 306/15 (West 2008).

Section 50 of the Automotive Repair Act states in relevant part: "(b) Itemization of cost of repair performed. *** [T]he invoice shall describe all repair work done by a motor vehicle repair facility, including all warranty work, and shall separately identify (i) each major part supplied in a manner so that the consumer can understand what was purchased and (ii) the total price charged for all parts and labor." 815 ILCS 306/50 (West 2008).

¶ 27 Tramco does not deny that a critical issue in the case is whether it was entitled to assert a possessory lien against plaintiffs' vehicle. Tramco also does not dispute that if it engaged in violations of the Automotive Repair Act, it would have been barred by section 75 of the Act from asserting a possessory lien against the vehicle. Instead, Tramco argues it was entitled to assert the possessory lien because the jury found it had not violated the Automotive Repair Act.

¶ 28 Tramco's argument assumes the jury knew and understood that if it found Tramco had violated the Automotive Repair Act, then Tramco would have been unable to assert the possessory lien. However, this assumption is not necessarily true because, as plaintiffs point out, the jury could have found that even if Tramco violated certain sections of the Automotive Repair Act, it was still entitled to assert and maintain a possessory lien against plaintiffs' vehicle.

¶ 29 Unless it was instructed by the trial court, the jury could not make a finding that pursuant to section 75 of the Automotive Repair Act, Tramco's violations of specific sections of the Act barred it from asserting a possessory lien. Without such an instruction, which was supported by the evidence, it is unlikely the jury would have understood the significance of Tramco's alleged violations of the Automotive Repair Act in regard to its entitlement to assert a possessory lien against plaintiffs' vehicle. We find the trial court committed reversible error in refusing to give plaintiffs' proposed jury instruction based on section 75 of the Automotive Repair Act.

¶ 30 In regard to Tramco's counterclaim, the jury found in favor of Valerie Mobley, but against Michelle Mobley in the amount of $835. However, judgment on the counterclaim was apparently based on the result reached by the jury on the possessory lien issue. Therefore, we believe a new trial is also justified as to the counterclaim.

¶ 31 For the foregoing reasons, we reverse the order of the circuit court denying plaintiffs' motion for a new trial and remand the cause to the circuit court for a new trial in accordance with this opinion.

¶ 32 Reversed and remanded with directions.