2016 IL App (3d) 150433

Opinion filed May 10, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2016

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| LARRY VAN ERT, | ) | of the 14th Judicial Circuit, |
| | ) | Rock Island County, Illinois, |
| Petitioner-Appellee, | ) | |
| | ) | Appeal No. 3-15-0433 |
| and | ) | Circuit No. 05-D-377 |
| | ) | |
| JANET VAN ERT, | ) | Honorable |
| | ) | Clarence M. Darrow, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE McDADE delivered the judgment of the court, with opinion.
Presiding Justice O'Brien and Justice Carter concurred in the judgment and opinion.

**OPINION**

¶ 1      The marriage of respondent, Janet Van Ert, and petitioner, Larry Van Ert, was dissolved in 2005.  Respondent filed a petition to vacate the judgment of dissolution pursuant to section 2-1401 of the Code of Civil Procedure (Code).  735 ILCS 5/2-1401 (West 2014).  Respondent appeals from the dismissal of her petition on due diligence grounds.  We reverse and remand for further proceedings.

¶ 2                                                 FACTS

¶ 3        At the outset, we note that this case was dismissed on the pleadings. Therefore, we derive the facts from the pleadings, which we take as true for purposes of this appeal. See *Bell v. Hutsell*, 2011 IL 110724, ¶ 9.

¶ 4        On July 8, 2005, petitioner filed a petition for dissolution of marriage after 30 years of marriage with respondent, and petitioner told respondent that they would both be represented by attorney Doug Scovil. At the time of filing, petitioner owned 46.5% of the stock in H & R Accounts, Inc. Two days prior to filing for dissolution (July 6, 2005), petitioner received an intention of interest from Pacific Onset Capital LLC (Pacific Onset) to acquire H & R Accounts for between $15 and 16 million. On July 31, 2005, petitioner received a proposal from Pacific Onset to purchase H & R Accounts for $16 million. Respondent was unaware of the intention of interest or the proposal. Petitioner never filed the mandatory financial disclosure affidavit.

¶ 5        On August 5, 2005, a judgment for dissolution of marriage was entered. The judgment included a "Marital Settlement Agreement" (MSA). Under the MSA, petitioner received, *inter alia*, his stock in H & R Accounts, "free and clear of any right, title or claim of interest" of petitioner, and respondent received a property in Hawaii. The MSA further stated, in part: (1) "[t]he parties acknowledge that each of them has been fully informed of the wealth, property, estate and income of the other"; (2) respondent has been informed of and received copies of petitioner's financial information; and (3) "[t]he parties acknowledge they have made a full and complete disclosure of their respective financial condition, and that they are fully informed of the wealth, property, estate and income of the other." At the dissolution proceedings, petitioner's counsel stated to the court that "[respondent] will end up with something in the neighborhood of about 2.8 million and [petitioner] will end up with something in the neighborhood of about 1.2. He'll be maintaining his interest in H & R Accounts and partnership that has some interest in real

estate." The record does not show that a valuation of H & R Accounts was ever disclosed to respondent during the course of the dissolution proceedings.

¶ 6    Less than two hours after the judgment for dissolution was entered, petitioner agreed to sell H & R Accounts to Pacific Onset for $16 million. At no point did respondent know that petitioner was contemplating a sale nor did she know that H & R Accounts was valued at $16 million.

¶ 7    In 2007, the parties decided to remarry in Hawaii. Five days prior to departing for Hawaii, petitioner asked respondent to sign a prenuptial agreement to protect his assets. The prenuptial agreement included a list of the parties' assets, and kept all property they had prior to their remarriage as separate property. Petitioner's total assets were listed as $7,833,053 and his net worth was $6,898,453. Respondent signed the agreement on March 8 and the parties were remarried on March 13.

¶ 8    In 2011, petitioner again filed for dissolution of marriage. Discovery and depositions were conducted in the second dissolution case, and on March 9, 2015, respondent filed a petition to vacate the 2005 dissolution of marriage judgment pursuant to section 2-1401 of the Code based on petitioner's fraudulent concealment of his financial information. 735 ILCS 5/2-1401 (West 2014).

¶ 9    The petition alleged that petitioner fraudulently concealed that he was selling H & R Accounts and that the company was valued at $16 million. Petitioner admitted that he did not give respondent the tax returns or balance sheets from H & R Accounts prior to their first dissolution of marriage, even though the MSA said he did. Respondent "did not have access to H & R's business accounting, financial information or business documents." Respondent was unaware that petitioner sold H & R Accounts for $16 million until July 23, 2014, when she saw

3

the acquisition documents while meeting with her attorney in preparation for petitioner's deposition in the second dissolution proceedings. Attached to the petition were various depositions and exhibits, including the deposition of petitioner. One of the exhibits at that deposition was the prenuptial agreement.

¶ 10    Petitioner filed an amended motion to dismiss pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2014)), alleging that the petition must be dismissed as: (1) the remarriage of the parties rendered the judgment of dissolution unenforceable; (2) respondent accepted benefits from the judgment and, therefore, was barred from attacking it; and (3) respondent did not exercise due diligence in the original action or in bringing the petition under section 2-1401.

¶ 11    The trial court granted petitioner's motion to dismiss. In a written order, the court rejected petitioner's arguments that remarriage was grounds for dismissal or that respondent's acceptance of benefits barred the action. The court further held that respondent sufficiently alleged that she had a valid claim and that her lack of diligence in the first dissolution was excusable. However, the court held that she failed to "allege facts sufficient to demonstrate that she exercised due diligence in bringing her §2-1401 petition." The court stated:

"[O]n March 8, 2007, she signed a prenuptial agreement which set out the fact that [petitioner's] net assets totaled nearly $7 million, more than double the amount she listed as assets. The $7 million is a far cry from the approximately $1.2 million that [respondent] heard Attorney Scovil report to the judge presiding over the dissolution (regardless of whether she thought [petitioner's] company was included in that figure—a quick scan of the marital settlement agreement that she signed shows it is not). Clearly at that point that [*sic*] she became aware of the operative facts that would give rise to her claims of fraud and unconscionably

4

[*sic*] pertaining [to] the assets awarded to [petitioner]. *** [S]he was on notice that [petitioner] came out of the dissolution with substantially greater assets than she was led to believe. Her petition filed years later in 2015 fails to sufficiently allege that she acted with diligence and therefore fails to state a cause of action." The court further held that respondent was put on notice at the first dissolution hearing that attorney Scovil did not represent her and that the Hawaii property was held in trust as it was included in the MSA.

¶ 12                                    ANALYSIS

¶ 13        On appeal, respondent argues that the trial court erred in dismissing her section 2-1401 petition on due diligence grounds. Because we find respondent alleged sufficient facts that the first judgment for dissolution of marriage was unconscionable where petitioner fraudulently concealed the sale and value of H & R Accounts, and the prenuptial agreement did not put respondent on notice of such fraud, we find the trial court's dismissal of her section 2-1401 petition was improper.

¶ 14        A motion to dismiss pursuant to section 2-615 of the Code challenges the legal sufficiency of a complaint based solely on defects on the face of the complaint. *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). A cause of action should not be dismissed under section 2-615 unless it is apparent that the respondent cannot prove any set of facts that would entitle her to relief. *Board of Directors of Bloomfield Club Recreation Ass'n v. Hoffman Group, Inc.*, 186 Ill. 2d 419, 424 (1999). Therefore, all well pleaded facts are taken as true, and the crucial inquiry is whether the allegations of the complaint, construed in the light most favorable to the respondent, are sufficient to establish a cause of action upon which relief may be granted. *Bell*, 2011 IL 110724, ¶ 9. Exhibits attached to the complaint become part of

5

the complaint and may be considered. *Brock v. Anderson Road Ass'n*, 287 Ill. App. 3d 16, 21 (1997). "Further, an exhibit attached to a complaint controls, and a motion to dismiss does not admit allegations of the complaint if such allegations are in conflict with the facts disclosed in the exhibit." *Id.* "A trial court's ruling on a section 2-615 motion to dismiss is subject to *de novo* review." *Armagan v. Pesha*, 2014 IL App (1st) 121840, ¶ 35; *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 44 (dismissal of a petition under section 2-1401 for failure to state a cause of action is subject to *de novo* review (citing *People v. Vincent*, 226 Ill. 2d 1, 14 (2007))).

¶ 15        In order to be entitled to relief under section 2-1401, the petition must allege facts supporting: "(1) the existence of a meritorious defense; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief." *Walters*, 2015 IL 117783, ¶ 37 (citing *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986)). The petition must typically be filed more than 30 days, but not more than two years after the entry of the final judgment in the original action. 735 ILCS 5/2-1401 (West 2014). However, there is an exception to the two-year period where a clear showing has been made that the person seeking relief is under legal disability or duress or the grounds for relief are fraudulently concealed. *People v. Caballero*, 179 Ill. 2d 205, 211 (1997) (citing *Crowell v. Bilandic*, 81 Ill. 2d 422, 427 (1980)).

¶ 16        Here, the trial court found that respondent "sufficiently allege[d] that she had a valid claim and that her lack of diligence in the original action [the first dissolution] was excusable." The court solely found that the petition failed to allege facts sufficient to show that she exercised due diligence in bringing the section 2-1401 petition. In coming to this conclusion, the trial court looked at the prenuptial agreement, which was an exhibit of the deposition that respondent

attached to the petition, and stated that respondent should have known at the time that she signed the prenuptial agreement that petitioner "came out of the [first] dissolution with substantially greater assets than she was led to believe" as his listed assets were substantially more than at the time of the first dissolution.

¶ 17    Taking all facts alleged in the petition as true, and considering the petition in the light most favorable to respondent, we do not believe that respondent's simple knowledge of petitioner's increase in assets put respondent on notice of petitioner's fraudulent concealment. The petition and supporting documents do not establish where petitioner's increase in assets came from or that petitioner came out of the dissolution, more than a year and a half before the prenuptial agreement was signed, with the excess assets. Stated another way, respondent's assets could have increased during the year and a half between the first dissolution and the signing of the prenuptial agreement. Just because petitioner had $7,833,053 in assets and a net worth of $6,898,453 on March 8, 2007 (the date the prenuptial agreement was signed), does not automatically establish that he had those assets on August 5, 2005 (the date of the first dissolution). Moreover, simply viewing those numbers in the abstract (on a one-page balance sheet of assets and liabilities attached to the prenuptial agreement) would not apprise respondent of the fact that those assets were likely accumulated during the parties' previous 30-year marriage and, if so, likely marital property that was not previously disclosed. Therefore, without more, we cannot say that the prenuptial agreement acted to put respondent on notice of petitioner's alleged fraudulent concealment.

¶ 18    Here, the allegations in the petition sufficiently allege that the judgment for dissolution of marriage was unconscionable where petitioner fraudulently concealed the sale and value of H & R Accounts. Specifically, the petition alleged that petitioner's attorney at the first dissolution

7

proceedings told the court that petitioner would end up with about $1.2 million and no valuation of H & R Accounts was included. Then, less than two hours after the first dissolution was entered, petitioner sold H & R Accounts for $16 million without disclosing the potential sale to respondent. Significantly, respondent was also never apprised of the intention of interest or purchase proposal that was tendered during the first dissolution proceedings. As respondent could potentially be entitled to relief under this set of facts, the petition was improperly dismissed.

¶ 19    Petitioner, in his brief, discusses at length respondent's failure to conduct discovery during the first dissolution of marriage and states that "she made her choices as to what to accept for a settlement of her marital property interest." This is not at issue here. The trial court found, and we agree, that respondent's petition sufficiently alleged that she had a valid claim and that her lack of diligence in the original action was excusable. The sole issue here is whether the court erred in finding that respondent failed to exercise due diligence in *bringing* the petition, not in the original action.[1]

¶ 20    Lastly, we note that respondent's allegations, taken here as true because the case is still at the pleading stage, adequately allege claims of fraud not only on a party but also on the court.

---

[1]We note that the trial court further found that respondent failed to exercise due diligence with regard to the allegations in the petition that she did not know that attorney Scovil was not representing her and that she did not know that the Hawaii property was kept in a trust. These allegations are not relevant here. The section 2-1401 petition should only have been dismissed under section 2-615 if respondent could not prove *any set of facts* that would entitle her to relief. See *Hoffman Group*, 186 Ill. 2d at 424.

8

¶ 21                                              CONCLUSION

¶ 22            The judgment of the circuit court of Rock Island County is reversed and remanded for

further proceedings.

¶ 23            Reversed and remanded.