**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190446

Order filed July 22, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0446 Circuit No. 87-CF-321 |
| NANCY RISH, | ) ) ) | Honorable Michael C. Sabol, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE LYTTON delivered the judgment of the court.
Justice Holdridge concurred in the judgment.
Justice Schmidt dissented.

_____

**ORDER**

¶ 1    *Held*: Defendant's allegations in her petition, supported by attached affidavits and exhibits, that no evidence of domestic violence was presented at her sentencing hearing and that the evidence was of such a conclusive character that it would likely change her natural life sentence were sufficient to state a claim for relief under section 2-1401(b-5) of the Code of Civil Procedure.

¶ 2    Defendant, Nancy Rish, was convicted of first degree murder and aggravated kidnapping and sentenced to concurrent terms of natural life and 30 years imprisonment. She filed a petition for relief from judgment under section 2-1401(b-5) of the Code of Civil Procedure (Code) (735

ILCS 5/2-1401(b-5) (West 2018)), seeking a resentencing hearing based on evidence that she was the victim of domestic abuse committed by her codefendant, Daniel Edwards. Defendant argues that the trial court erred in granting the State's section 2-615 motion to dismiss because the allegations in her petition, when viewed in a light most favorable to her, are sufficient to state a claim for relief under section 2-1401(b-5) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401(b-5) (West 2016)). We reverse and remand with directions.

¶ 3                                    I. BACKGROUND

¶ 4        In October 1987, defendant Nancy Rish was charged with first degree murder and aggravated kidnapping for abducting Stephen Small, a wealthy Kankakee businessman, and burying him alive in an attempt to collect $1 million in ransom. The State charged defendant based on an accountability theory, alleging that defendant promoted, aided, and facilitated her boyfriend, Edwards, in the kidnapping scheme.

¶ 5        At trial, the evidence revealed that Small was lured away from his home after receiving a call at 12:30 a.m. on the morning of September 2, 1987. Someone on the other end of the line informed Small that there had been a break-in at the Bradley house, a property Small was renovating. A few minutes later, Small's son heard the garage door open and close. The phone rang again at 3:30 a.m. and Small's wife answered. She was told that her husband was being held for ransom and that she was not to contact the F.B.I. or police. She then heard her husband's voice. He indicated that the call was not a joke, that he was being held captive in a box that was covered with sand, and that he had enough air for 24 to 48 hours.

¶ 6        Defendant's sister contacted the Federal Bureau of Investigations (FBI) shortly after the phone call. FBI agents testified that on September 4, following two days of surveillance and a search of the house where defendant and Edwards lived, they discovered Small's body in a wooden

box buried in a rural area near Aroma Park. Small had been buried alive and died as a result of "asphyxia due to suffocation."

¶ 7        Agents took defendant and Edwards into custody on the morning of September 4, 1987, before Small's body was found. Between September 4 and September 8, 1987, defendant gave 8 statements to investigators. In each one, she denied participating in the kidnapping plan and claimed she had no knowledge that Edwards had buried Small alive.

¶ 8        During defendant's initial interview, she denied any knowledge of Edwards' kidnapping plan. Later that afternoon, she told officers that she drove Edwards around before and after Small was kidnapped, but she gave conflicting accounts of the locations they visited.

¶ 9        Defendant was interviewed again on September 6, two days after agent's found Small's body. Detectives specifically asked her if she knew anything about the box. Defendant admitted that Edwards built a box in their garage, but she claimed he sold it in May or June. In an interview the next day, she admitted that her story about the box was a fabrication and that the box remained in the garage until August 31. She also admitted that on the evening of September 1, she followed Edwards to Kankakee, where he parked his van and got into her car. She dropped Edwards off at Cobb Park, one block from the Small residence, and around 3 a.m. the next morning, she picked him up from a remote location near Small's burial site. Defendant also told officers that on the night of August 30, 1987, she and Edwards "got into an argument" and he ran upstairs, got a gun, pointed it at his head, and indicated that he was going to kill defendant, her son, and himself.

¶ 10       In her final statement to police on September 8, 1987, defendant admitted that after she picked Edwards up in Kankakee but before she dropped him off at Cobb Park, she drove him to a gas station where he used a pay phone around 12:30 a.m. She also amended the account of her argument with Edwards on August 30, stating that Edwards actually pointed the gun at her head.

3

¶ 11    At trial, defendant claimed that she was unaware of the plan to kidnap Small. She supported that theory with her own testimony, which was substantially similar to the statements she gave to investigators in her final two interviews. She also testified about several domestic disputes she had with Edwards. When asked by her attorney why she lied to police in her interviews, she responded that she did so because she realized that Edwards had used her and she was "scared to tell the truth."

¶ 12    The jury convicted defendant of murder and kidnapping. At the sentencing hearing, defendant's mother, her sisters, and a friend provided testimony regarding defendant's good character, her quiet nature, and her devotion to her son. Her three sisters testified that defendant was the youngest of four girls and that she grew up in an abusive household. Defendant's father was an alcoholic and physically and mentally abused defendant's mother for years. Defendant's mother testified that defendant was a good mother. She agreed that her husband was violent and aggressive and testified that he became more abusive after defendant was born. Kathy Goodrich testified that she was one of defendant's closest friends. She also stated that defendant was a good person who loved her son. Goodrich described Edwards as a "shady character" with friends who lied and stole from people. All of the witnesses testified that they did not like Edwards; they described him as distant and overbearing. No one testified that Edwards physically or mentally abused defendant or her son.

¶ 13    The trial court considered the possibility of defendant's rehabilitation and weighed it against the factors of deterrence and retribution. It then sentenced defendant to a term of natural life imprisonment for first degree murder, to be served concurrently with a term of 30 years imprisonment for aggravated kidnapping.

¶ 14　　　On direct appeal, defendant argued that the evidence was insufficient to prove her knowing participation in the kidnapping and murder and that her sentence was excessive. This court affirmed her convictions and sentence. *People v. Rish*, 208 Ill. App. 3d 751 (1991). Subsequently, defendant filed a 16-count postconviction petition, a federal *habeas corpus* petition and a clemency petition, none of which were successful in overturning the jury's verdict or her sentence.

¶ 15　　　In 2015, defendant filed a successive postconviction petition. In her petition, she alleged actual innocence, claiming that she was an unwitting accomplice. She supported her claim with an affidavit from Edwards and a deposition, in which Edwards stated that he never told defendant about the kidnapping plot and that he actively worked to conceal it from her. The trial court dismissed defendant's petition at the second stage, and we affirmed, concluding that the affidavits were cumulative of evidence the jury received from defendant's own testimony and they were not so conclusive in character that the information would have changed the result on retrial. *People v. Rish*, 2017 IL App (3d) 160091-U, ¶ 28.

¶ 16　　　In December 2017, defendant filed this petition for relief from judgment pursuant to section 2-1401(b-5) Code. She claimed that new domestic violence laws and the amended sentencing factors in section 5-5-3.1(a) of the Unified Code of Corrections (Code of Corrections) (730 ILCS 5/5-5-3.1(a) (West 2016)) required a resentencing hearing at which she could present mitigating evidence that she was the victim of domestic violence at the hands of her co-defendant, Edwards. She claimed that "[n]o evidence of domestic violence against Petitioner was presented at her sentencing hearing" and that she was "unaware of the mitigating nature of the evidence of domestic violence at the time of sentencing in 1988." In addition, defendant alleged that the new domestic violence evidence was material, in that it would lessen her culpability and the severely harsh sentence of natural life imposed by the trial court.

¶ 17    In support of the domestic violence claims, defendant alleged that "[o]n or about August 31 and September 1, 1987, Edwards was preparing to commit the kidnapping of [Small] *** and used domestic violence as defined in the Domestic Violence Act to coerce Petitioner to drive him to and pick him up from the area where he would carry out his planned kidnapping." The petition further alleged that "Edwards threatened [her] with a gun, saying he would kill her and her 8 year old son if she did not assist him" and that Edwards "used domestic violence to harass and intimidate [her] to coerce her unwitting assistance in his offense by telling her that he was being threatened by someone who would kill him, his ex-wife, and his children if [Edwards] did not do what this person told him to do."

¶ 18    Attached to the petition were several affidavits documenting Edwards's threats and physical abuse and detailing defendant's life of physical and verbal abuse by her father. Defendant's friend, Lori Brault, described a conversation that she had with defendant in July 1987 in which defendant said that Edwards was "crazy," that he had a gun, and that she was afraid for herself and her son. Defendant told Brault that she was trying desperately to get away from Edwards. In another affidavit, defendant's friend, Kathy Goodrich, stated that Edwards called her and her husband from the Kankakee County jail shortly after he was arrested for kidnapping Small and told them that he yelled at defendant and her son and threatened to kill them both if defendant did not drive him and pick him up from the location where he buried Small. In a third affidavit, Lori Guimond, defendant's sister, stated that defendant's father was physically abusive toward defendant's mother. She said that defendant learned from her mother not to discuss the abuse with anyone and to take care of herself.

¶ 19    Excerpts from the 2015 evidence deposition of Edwards were included as an exhibit. In his deposition, Edwards stated that he disguised his voice and made angry calls to defendant's home

6

at the time of the kidnapping to make defendant believe that she and her son were in danger of death or great bodily harm. Defendant also described numerous acts of physical abuse, violence, and intimidation that he committed against defendant in the months leading up to Small's kidnapping.

¶ 20    Defendant also attached a letter written by Dr. Michelle Van Natta, a professor of sociology from Northwestern University. Dr. Van Natta opined that defendant's affidavit and the affidavits of others attached to the petition supported her claims of serious domestic violence. She stated that these experiences most likely affected defendant's behavior and had a strong influence on her compliance with Edwards's demands.

¶ 21    The State filed a motion to dismiss defendant's petition on timeliness grounds, asserting that it was time-barred because defendant failed to file it within two years of her sentence. The trial court granted the State's motion, and defendant appealed. On appeal, the State withdrew from its position and filed an agreed motion for summary remand, waiving the two-year limit defense. We granted the State's motion and remanded for further proceedings.

¶ 22    On remand, the State filed a motion to dismiss under section 2-615 of the Code, claiming that defendant failed to state a cause of action upon which a new sentencing hearing could be ordered. It argued that the allegations of abuse failed to demonstrate that the evidence was of such conclusive character that it would likely change the sentence imposed by the sentencing court. The State maintained that the trial court's sentence rested on the "horrific nature of the crime in which [defendant] played an integral part" and that the evidence of domestic violence could not overcome the most important aggravating factor at sentencing, the seriousness of the crime. In response, defendant argued that the new evidence of domestic violence and the amended sentencing statute

7

warranted a resentencing hearing and that her petition sufficiently stated a cause of action under section 2-1401(b-5) to overcome a motion to dismiss.

¶ 23 The trial court granted the State's motion to dismiss, finding that defendant failed to allege facts "sufficient to show that the new evidence of domestic violence against the defendant is of such a conclusive character that it would likely change the sentence imposed by the original trial court." At the conclusion of the hearing, defense counsel asked the court to clarify its ruling for the purpose of amending the petition. The court responded, "What facts may be out there I don't know, but it isn't sufficient—in my opinion, it isn't sufficiently pled as to Element 5."

¶ 24                                    II. ANALYSIS

¶ 25                              A. Section 2-615 Dismissal

¶ 26 Defendant argues that the trial court erred in granting the State's section 2-615 motion to dismiss her section 2-1401 petition where the State failed to identify any defect in the pleadings and, instead, improperly assessed the merits of her petition.

¶ 27 A motion to dismiss under section 2-615 of the Code challenges the legal sufficiency of the petition solely on the basis of defects on the face of the pleading. *In re Marriage of Van Ert*, 2016 IL App (3d) 150433, ¶ 14. A cause of action should not be dismissed under section 2-615 unless it is apparent that the petitioner cannot prove any set of facts that would entitle her to relief. *Id.* At the motion to dismiss stage, all well-pleaded facts are taken as true, and the crucial inquiry is whether the allegations in the petition, construed in a light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted. *Id.* A petition should be dismissed under section 2-615 only if it is clearly apparent from the petition that no set of facts can be proved that would entitle the petition to recovery. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). When ruling on a section 2-615 motion, the trial court should only consider

8

the allegations in the pleadings. *Chandler v. Illinois Central R.R. Co.*, 207 Ill. 2d 331, 348 (2003). Exhibits attached to the petition are part of the complaint and may be considered in support of the allegations in the pleading. *Van Ert*, 2016 IL App (3d) 150433, ¶ 14.

¶ 28    Because a motion to dismiss under section 2-615 tests only the legal sufficiency of the pleadings based on facial defects, "[i]t does not assess the underlying facts." *Heastie v. Roberts*, 226 Ill. 2d 515, 538 (2007). "What the evidence presented at trial showed or failed to show is therefore irrelevant to the determination of whether [the] motion to dismiss was properly granted." *Id.*

¶ 29    A proceeding under section 2-1401 of the Code provides a forum by which final orders and judgments may be vacated or modified in civil or criminal proceeding. *People v. Vincent*, 226 Ill. 2d 1, 7 (2007). While section 2-1401 petitions are normally used as a vehicle to bring facts to the attention of the trial court which, if known at the time of judgment, would have precluded its entry, they may also be used to challenge a purportedly defective judgment for legal reasons. *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 41.

¶ 30    Effective January 1, 2016, the General Assembly enacted Public Act 99-0384 (Pub. Act 99-0384, eff. Jan. 1, 2016), amending section 5-5-3.1(a) of the Code of Corrections (730 ILCS 5/5-5-3.1(a) (West 2016)) to allow courts to consider domestic violence as a mitigating factor at sentencing. Section 5-5-3.1(a) provides:

> "[T]he following grounds shall be accorded weight in favor of withholding or
> minimizing a sentence of imprisonment:
>
> * * *

9

(15) At the time of the offense, the defendant is or had been the victim of domestic violence and the effects of the domestic violence tended to excuse the defendant's criminal conduct." *Id.* § 5-5-3.1(a)(15).

¶ 31 Public Act 99-0384 also amended section 2-1401 of the Code to include subsection (b-5), which allows for relief from judgment based on new evidence of domestic violence. Thus, as of January 2016, a petitioner may present a meritorious claim for postjudgment relief under section 2-1401(b-5) if the allegations in the petition establish each of the following by a preponderance of the evidence:

"(1) the movant was convicted of a forcible felony;

(2) the movant's participation in the offense was related to him or her previously having been a victim of domestic violence as perpetrated by an intimate partner;

(3) no evidence of domestic violence against the movant was presented at the movant's sentencing hearing;

(4) the movant was unaware of the mitigating nature of the evidence of the domestic violence at the time of sentencing and could not have learned of its significance sooner through diligence; and

(5) the new evidence of domestic violence against the movant is material and noncumulative to other evidence offered at the sentencing hearing, and is of such a conclusive character that it would likely change the sentence imposed by the original trial court." 735 ILCS 5/2-1401(b-5) (1)-(5) (West 2018).

As used in subsection (b-5), the term "domestic violence" means "abuse as defined in Section 103 of the Illinois Domestic Violence Act of 1986." *Id.* § 2-1401(b-5). Abuse includes physical abuse and harassment. See 750 ILCS 60/103(l) (West 2018).

10

¶ 32        Defendant filed a petition for relief from judgment under section 2-1401(b-5) in December 2017, seeking a resentencing hearing to allow the court to consider evidence of domestic violence as a mitigating factor in imposing an appropriate sentence. The petition alleged that: (1) defendant was convicted of a forcible felony; (2) Edwards manipulated and coerced defendant's participation through acts of domestic violence; (3) evidence of those acts of domestic violence was not presented at the original sentencing hearing; and (4) she was unaware of the mitigating nature of the domestic violence evidence at the sentencing in 1988. Defendant further alleged that, based on the new mitigating sentencing provision in section 5-5-3.1(a) of the Code of Corrections, the evidence of domestic violence was material and would likely reduce her severely harsh sentence of natural life. Defendant attached affidavits from friends and family and excerpts of Edwards's own statements describing acts of physical and mental abuse that he committed against defendant, including intimidation and threats of bodily harm to her son. She also attached the transcript of witness testimony from the sentencing hearing in which no one mentioned Edwards' acts of domestic violence. In light of these allegations contained in the pleadings, we are compelled to conclude that defendant set forth all five elements of a section 2-1401(b-5) claim and that dismissal under section 2-615 was improper.

¶ 33        The State argues that the evidence of domestic violence cited by defendant cannot support her claim because it was not "newly discovered." The State asserts that because domestic abuse evidence was presented at trial through defendant's testimony and her statements to police, she cannot satisfy the third element—that no evidence of domestic abuse was presented at sentencing.

¶ 34        The State's interpretation of the requirements of section 2-1401(b-5) defies the basic tenants of statutory construction. The plain language of the third element states that the petitioner must demonstrate "no evidence of domestic violence against the movant was presented at the

11

movant's sentencing hearing." The statute does not require the petitioner to show that no evidence was presented at the movant's *trial* or sentencing hearing. Where the terms of a statute are plain and unambiguous, we will not depart from that language and read into the statute exceptions, limitations or conditions that the legislature did not express. See *People v. Shinaul*, 2017 IL 120162, ¶ 17. By its plain terms, section 2-1401(b-5) demonstrates the legislature's intent that a sentence reflect the mitigating nature of domestic abuse so that when such evidence is not put forward at an original sentencing hearing, a new sentencing hearing can be conducted. Here, defendant's petition clearly alleges that no domestic violence evidence was presented at the sentencing hearing and the attached affidavits and exhibits support that allegation.

¶ 35        With the State's position in mind, the dissent maintains that the evidence of domestic violence against defendant was not new and that this theory has been repeatedly rejected. The record, however, simply does not support that conclusion. At trial, defendant maintained that she was an unwitting accomplice. At sentencing, defendant presented evidence of her good character and Edwards' bad character. On direct appeal, she claimed that the evidence failed to show she knew about the plan. In collateral proceedings, she continued to challenge her conviction, claiming again that she had no knowledge of the kidnapping plan. Time and again, defendant maintained that she was unaware of the plan to kidnap Small and hold him for ransom. But she never claimed that Edwards' acts of domestic abuse against her lessened her culpability, nor did she present evidence in support of that claim. That is the argument she is attempting to assert in her petition; that is the claim that survives a section 2-615 dismissal.

¶ 36        In granting the State's section 2-615 motion, the trial court reached beyond the face of the petition and inappropriately ruled on the merits of defendant's claim. The trial court noted that the original sentencing court found the murder exceptionally brutal and heinous and that the nature of

12

the crime demanded a severe sentence. It then ruled that the petition "does not allege facts sufficient to show that the new evidence of domestic violence against the defendant is of such a conclusive character that it would likely change the sentence imposed by the original trial court." However, the court failed to identify any defects on the face of the petition. It weighed the evidence of domestic violence, adjudicated the merits, and found the petition wanting. As cautioned in *Heastie*, in ruling on a motion for failure to state a claim, a court may not "assess the underlying facts." *Heastie*, 226 Ill. 2d at 538. In this case, the trial court inappropriately assessed the underlying facts.

¶ 37 The allegations in defendant's petition and the supporting exhibits are sufficient to state a claim for relief under section 2-1401(b-5). Accordingly, we reverse the trial court's dismissal of the petition under section 2-615 and remand for further proceedings.

¶ 38 B. Reassignment to a Different Trial Judge

¶ 39 Defendant asks us to remove the trial judge and assign the case to a different judge on remand. She claims that because the trial judge improperly considered the merits of the case and concluded that the new evidence of domestic violence was not of such a conclusive character that it would affect the original sentence imposed, she would be substantially prejudiced if her case were remanded to the same judge. We agree.

¶ 40 Illinois Supreme Court Rule 366(a)(5) gives a reviewing court the authority, in its discretion, to reassign a matter to a new judge on remand. Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994); *People v. Serrano*, 2016 IL App (1st) 133493, ¶ 45. However, the decision to reassign a judge is not one to be made lightly. *People v. Vance*, 76 Ill. 2d 171, 179 (1976). In order to obtain a new judge on remand, the defendant must show "[s]omething more" than the trial judge presiding over an earlier proceeding and an unfavorable ruling. *Id.* at 181. "A defendant can show 'something

13

more' by demonstrating 'animosity, hostility, ill will, or distrust' [citation], or 'prejudice, predilections or arbitrariness' [citation]." *People v. Reyes*, 369 Ill. App. 3d 1, 25 (2006). Evidence that a judge is predisposed on a substantive issue in a case is proof of prejudice. See *Serrano*, 2016 IL App (1st) 133493, ¶ 45; see also *Reyes*, 369 Ill. App. 3d at 26 (trial judge replaced on remand for inappropriately addressing merits of new evidence that defendants' confessions were coerced at the first stage of postconviction proceedings).

¶ 41    Where a judge gives the impression that new evidence is insufficient to meet the burden at the first stage of a petition for relief from judgment, a defendant "would be 'substantially prejudiced' [citation] if the case were remanded to the same trial judge." *Reyes*, 369 Ill. App. 3d at 26 (quoting *People v. Hall*, 157 Ill. 2d 324, 331 (1993)). Reassignment of a trial judge on remand is appropriate if the judge's prejudice or predilections would interfere with the administration of fair and impartial justice. See generally *Hall*, 157 Ill. 2d at 332; *Vance*, 76 Ill. 2d at 181-82

¶ 42    In *Serrano*, the defendant filed a postconviction petition alleging actual innocence. *Serrano*, 2016 IL App (1st) 133493, ¶ 12. Following a third-stage evidentiary hearing, the trial court granted the State's motion for a directed finding. The defendant appealed, arguing that he had presented sufficient evidence to meet the directed finding threshold and that a new judge was necessary on remand. He claimed that because the judge had already ruled that no contrary verdict could ever stand and expressed disregard for the evidence presented, it would be "worthless" to send the case back to the same judge. *Id.* ¶ 45. The reviewing court agreed, stating that a new judge was required because the postconviction court "gave the impression that it was flatly unwilling to consider the evidence offered by petitioner." *Id.*

¶ 43    Similarly, the trial judge in this case improperly prejudged a central issue in defendant's petition for relief from judgment—whether new evidence of domestic violence against her is

14

sufficient to warrant resentencing. In ruling on whether defendant's petition should be dismissed, the trial judge concluded that "the petition does not allege facts sufficient to show the new evidence of domestic violence against the defendant is of such a conclusive character that it would likely change the sentence imposed by the original trial court." While such a conclusion may be invited at a hearing on the merits of a 2-1401(b-5) petition, it is not warranted at the pleadings stage. The trial judge also remarked that he did not know "what facts *** if any" would have changed the sentence imposed. Given the judge's comments in ruling on the motion to dismiss, we find that defendant would be substantially prejudiced if her case was remanded to the same trial judge. See *Serrano*, 2016 IL App (1st) 133493, ¶ 45. Accordingly, the interests of fairness and justice would be best served by assigning this case to a different judge to address the merits of the petition.

¶ 44                                               III. CONCLUSION

¶ 45        The trial court's order dismissing defendant's 2-1401(b-5) petition is reversed, and the cause is remanded to presiding judge of the circuit court with directions to assign the case to a different judge to adjudicate the reinstated proceedings.

¶ 46        Reversed and remanded with directions.

¶ 47        JUSTICE SCHMIDT, dissenting:

¶ 48        Defendant's petition seeks relief from her natural life sentence based on her allegations of domestic abuse. Specifically, she alleged that Edwards threatened her and her son with a gun, made threatening phone calls with a disguised voice, on several occasions he grabbed her arm and shoved her onto chairs, and he pulled the phone out of the wall when defendant attempted to call the police. According to defendant, she complied with Edwards' demands and unwittingly aided the kidnapping scheme out of fear. In light of this, defendant sought a new sentencing hearing to present this evidence to mitigate her sentence.

15

¶ 49     The majority finds the above allegations of domestic abuse sufficient to state a claim for relief under section 2-1401(b-5) of the Code (735 ILCS 5/2-1401(b-5)(3) (West 2018)). The majority finds that she sufficiently alleged that no evidence of domestic violence was presented at her sentencing hearing. This evidence is not new. We should affirm the dismissal of her section 2-1401(b-5) petition.

¶ 50     "A section 2-1401 petition for relief from a final judgment is the forum in a criminal case in which to correct all errors of fact occurring in the prosecution of a cause, unknown to the petitioner and court at the time judgment was entered, which, if then known, would have prevented its rendition. [Citations.]" *People v. Haynes*, 192 Ill. 2d 437, 461 (2000). "[A] section 2-1401 petition *** requires the court to determine whether facts exist that were unknown to the court at the time of trial and would have prevented entry of the judgment." *People v. Pinkonsly*, 207 Ill. 2d 555, 566 (2003).

¶ 51     Here, defendant must plead that "no evidence of domestic violence against the movant was presented at the movant's sentencing hearing." 735 ILCS 5/2-1401(b-5)(3) (West 2018).[1] At trial, the State presented defendant's statements to police. In one statement, she told police that Edwards pointed a gun at his head and threatened to kill her, her son, and himself. She later changed her story and told police that Edwards had pointed the gun at her. In her own testimony, she described domestic disputes between her and Edwards. She claimed that she provided false statements to the police due to her fear of Edwards. The sentencing court heard all the evidence presented at trial. The court, therefore, knew of—and considered—the allegations of domestic abuse at the time it

---

[1]While the trial court did not specifically address this element, we may affirm on any basis supported by the record. See *Beacham v. Walker*, 231 Ill. 2d 51, 61 (2008).

imposed the sentence. Thus, the court was keenly aware of the allegations of domestic abuse at the time it imposed the sentence. This is not new evidence.

¶ 52          We should affirm the trial court.